# SECURITY STORAGE AND TRUST COMPANY, A BODY CORPORATE, *vs.* F. WARD DENYS.

*Storage Companies: bailees; responsibility for goods stored or moved. Principal and agents: transportation of goods; violation of instructions. Prayers: on theory without evidence.*

A corporation engaged in the storage, moving and shipping of furniture as a warehouseman and bailee, is bound only to ordinary care; and is responsible for losses or damages caused by ordinary negligence.                    p. 344

Where goods are delivered to a warehouseman in good condition, and when redelivered some are found in bad condition and some lost, the law presumes negligence on the part of the bailee, and throws upon him the burden of accounting for the condition of the property and for the missing articles.                    p. 344

In such a case, the testimony of an expert who valued the goods in their injured condition, and from the testimony of the owner appraised their value before the injury complained of, is admissible.                    p. 341

Where an agent violates the instructions of his principal as to the shipment of goods, he assumes the risk of injuries occurring in the course of the unauthorized transportation.    p. 346

Prayers on a theory of which there is no evidence are erroneous.                    p. 347

Prayers ignoring a theory of which there is evidence properly in the case, are erroneous.                    p. 347

*Decided January 14th, 1913.*

Appeal from the Superior Court of Baltimore City (DOBLER, J.).

The facts are stated in the opinion of the Court.

The following are the prayers that were offered by the plaintiff and by the defendant, and the action of the Court upon them:

*Plaintiff's First Prayer.*—The plaintiff prays the Court to instruct the jury that the defendant, the Security Storage & Trust Company of Baltimore, is liable to the plaintiff in this action for any loss of, or injury to, the goods, consisting of the furniture and other household effect belonging to the plaintiff, and being in the plaintiff's residence on Roland avenue at the time when the defendant company undertook to take said goods on storage, in or about July, 1907, due to the failure on the part of the defendant company, or its agents, to exercise due care in collecting and transporting said goods from plaintiff's said residence on Roland avenue to the defendant's warehouse on North avenue, or to the failure on the part of the defendant company, or its agents, to exercise due care in the storage, packing and custody of said goods in the defendant's said warehouse, or in any subsequent handling of said goods by the defendant.

And if the jury find that the defendant company when called upon by the plaintiff to deliver said goods for shipment failed to deliver any of them, or delivered any of them in a damaged condition which were not so damaged when received by the defendant company, or its agents, at the plaintiff's dwelling on Roland avenue, then the presumption is that such loss of or injury to said goods was caused by the failure on the part of the defendant company, or its agents, to exercise ordinary care to prevent said loss or injury; and the burden is upon the defendant company to establish the contrary by affirmative proof to the satisfaction of the jury.   (*Granted as amended.*)

*Plaintiff's Second Prayer.*—If the jury find from the evidence that the plaintiff, Rev. F. Ward Denys, entered into an agreement with the defendant Company—the Security Storage and Trust Company of Baltimore—to take all the furniture and other articles of household equipment, includ-

ing those mentioned in the declaration in this case, from his, the plaintiff's, residence and dwelling house on Roland avenue, and store the same in the defendant company's warehouse in Baltimore city, and keep the same on storage for compensation, as testified to by the plaintiff, and that in or about the month of December, 1910, the plaintiff instructed the defendant company to ship said goods to him at his residence in the city of Washington and the defendant company undertook to do so and did ship said goods in the cars of the B. & O. Railroad Company to the Security and Storage Company of Washington, with instructions to deliver said goods to the plaintiff at his residence on I street, in Washington, only upon payment of the defendant company's bill for the shipment of the same, then the B. & O. Railroad Company was the agent of the defendant company in transporting said goods; and if the jury further find that the goods mentioned in the declaration were received by the defendant company or its agents from the plaintiff at his residence in Roland Park in good condition, and delivered by the defendant company to the said B. & O. Railroad Company upon its cars in Baltimore in like good condition, but that certain of said goods, to wit, a bronze bas relief, by Cooper; a silver-plated chafing dish; a large coffee mill; ice-cream freezer; set of kitchen cooking utensils; plates, cups; saucers, knives and forks for servants' table, were never delivered to the plaintiff at his said residence in Washington, and have never been received by him, and that said certain other articles, to wit, three brass beds; large leather-covered extension easy chair; leather-covered tufted lounge; carved imported Italian frame, and other articles from said house at Roland Park were delivered in a damaged condition, then the presumption of law is that the loss of said articles and the injury to said other articles, if the jury find such loss and injury, was due to the negligence of the said B. & O. Railroad Company, the defendant's agent, and the defendant is, therefore, liable to the plaintiff for the said loss and injuries, and the

verdict of the jury should be for the plaintiff for an amount
equal to the value of the goods thus lost, and also for the
difference between the value of the goods when delivered to
the defendant company and their value after said injuries,
plus the cost of repairing such of them as were repaired.
(*Refused.*)

*Plaintiff's Third Prayer.*—The plaintiff prays the Court
to instruct the jury that if they find from the evidence that
the plaintiff, Rev. F. Ward Denys, on or about the 27th
of July, 1907, delivered to the defendant, the Security
Storage and Trust Company, of Baltimore City, the furni-
ture and other goods mentioned in the declaration, to be
kept on storage for compensation, and held subject to the
plaintiff's order. And that the defendant was engaged in
the business of keeping furniture and other articles of
the kind mentioned in the declaration on storage, and deliv-
ering the same upon the orders of the owners thereof, and
that the defendant kept the goods in question until on or
about the 10th day of December, 1910, when the plaintiff
directed the defendant to ship said goods to him, the plain-
tiff, in the City of Washington, D. C., by, upon and over
the lines of the Pennsylvania Railroad Company, and in a
single car of the Pennsylvania R. R. Co. That the defend-
ant accepted the employment, and undertook, for compensa-
tion in money, as agent of the plaintiff, to carry out said
directions, but that instead of shipping said goods in a
single car of the Pennsylvania R. R. Co., it shipped the
same on two cars over the lines of the Baltimore & Ohio
R. R. Co., without the plaintiff's knowledge that said goods
were going to be shipped in two cars, or over the Baltimore
& Ohio Railroad, and employed the Security Storage Com-
pany, of Washington City, to take said goods from the cars
of the Baltimore & Ohio Railroad in Washington, and
deliver the same to the plaintiff's house in said city, with
instructions that at the time of delivering said goods, it, the
said Security Storage Company, of Washington, should col-
lect from the plaintiff the amount of the said defendant com-

pany's bill against the plaintiff for shipping said goods, as well as the amount to be paid to the said Security Storage Company, of Washington. And if they further find from the evidence that said goods were in good condition when they were so delivered to the cars of the said Baltimore & Ohio Railroad Company, and that certain of the said goods were never delivered to the plaintiff at his house in Washington, and others of said goods were delivered in a damaged condition, then the defendant company is liable to the plaintiff for the actual value of the goods not delivered, and also for the difference between the actual value of the goods delivered in an injured condition and their value before said injuries, and also any expense to which the said plaintiff was put as a direct result of said damage and loss, and the verdict of the jury should be for the plaintiff for the amount equal to the actual value of the goods not delivered and also for the difference between the actual value of the goods delivered in an injured condition and their value before said injuries. But if the jury shall find that the plaintiff assented to the shipment of his goods over the Baltimore and Ohio Railroad, and if they find said goods were shipped in two cars of the Baltimore & Ohio Railroad, and were not exposed to greater risk than if they had been shipped in a single car, the defendant cannot be held responsible for any loss or injury sustained by reason of the transportation over the Baltimore and Ohio Railroad. (*Granted as amended.*)

---

*Defendant's First Prayer.*—The Court instructs the jury that under the pleadings and evidence in this case there is no legally sufficient evidence to entitle the plaintiff to recover, and their verdict must be for the defendant. (*Refused.*)

*Defendant's Second Prayer.*—If the jury shall believe that the defendant received certain household goods of the plaintiff for storage in or about August, 1907, and shall believe that the defendant used reasonable care in hauling said goods

to its warehouse and storing the same in a place of safety according to their kind, and that the defendant also used reasonable care in keeping said goods from injury while so stored; and if the jury shall further believe that the defendant used reasonable care in delivering the goods and placing them in the cars of the Baltimore & Ohio Railroad in December, 1910, and if they find that the plaintiff assented that they be shipped by the Baltimore & Ohio Railroad, then the verdict of the jury must be for the defendant, unless the jury shall find that the goods of the plaintiff were damaged on the Baltimore & Ohio Railroad because they were not shipped in a single car; and the jury is instructed that reasonable care in this connection means such care as a prudent man would give to the keeping of his own goods of like kind and under like circumstances. (*Granted as amended.*)

*Defendant's Third Prayer.*—The Court instructs the jury that there is no evidence in this case legally sufficient to show that the defendant is responsible for any damage to plaintiff's goods, or for any loss of plaintiff's goods, which may have occurred after they were placed in the cars of the Baltimore and Ohio Railroad Company in Baltimore, and that there can be no recovery against the defendant on account of any such damage to goods or loss of goods so occurring.

To which third prayer the Court added the following:

Unless they shall find that the plaintiff did not assent to their shipment over the Baltimore & Ohio Railroad, and unless they shall find that they were exposed to greater risk than if they had been shipped in a single car. (*Granted as amended.*)

*Defendant's Fourth Prayer.*—If the jury shall find that the bronze placque and other articles of plaintiff reported to be missing by him were stolen while they were in the custody of the defendant, there can be no recovery against the defendant on account of the taking of such goods, if the jury shall believe that the defendant exercised reasonable and due care in the keeping of them. (*Refused.*)

*Defendant's Fifth Prayer.*—The Court instructs the jury that in order for the plaintiff to recover in this case, the plaintiff must prove that there was a lack of reasonable care in hauling and storing the goods of the plaintiff on the part of the defendant; and if there be the absence of such proof their verdict must be for the defendant. (*Granted.*)

*Defendant's Sixth Prayer.*—If the jury finds that the plaintiff failed to disclose to the defendant that amongst his goods stored was a valuable bronze placque and other articles of unusual value, but allowed said valuable goods to be hidden away with other goods, then the plaintiff can not hold the defendant to the same degree of liability as to such valuable goods if the same were lost or destroyed, had the plaintiff called the attention of the defendant to said valuable articles at the time they were stored. (*Granted.*)

*Defendant's Seventh Prayer.*—If the jury shall find that the defendant advised the plaintiff that in moving the goods from Baltimore to Washington that they should be boxed separately and carefully packed, and that unless this was done that the goods would be probably damaged in transportation to Washington, and if the jury shall find that the plaintiff declined to follow this advice of the defendant, and shall further find that the goods were damaged on account of not having been boxed and packed as advised by the defendant, then the defendant is not responsible for any damage so caused to the goods of the plaintiff. (*Refused.*)

*Defendant's Eighth Prayer.*—If the jury shall believe that the plaintiff directed the defendant to ship his goods by the Pennsylvania Railroad, and that the defendant disregarded said order and shipped the goods by the Baltimore & Ohio Railroad, nevertheless their verdict must be for the defendant; provided the defendant used reasonable care in storing and hauling the goods of the plaintiff, unless the jury shall find that there is evidence that transportation of freight over the Baltimore & Ohio Railroad is accompanied by greater danger than transportation of freight over the Pennsylvania Railroad. (*Refused.*)

*Defendant's Ninth Prayer.*—If the jury shall believe that the defendant reported to the plaintiff that it was impossible to get a forty-foot car on the Pennsylvania Railroad, and the plaintiff authorized the defendant to get cars on the Baltimore & Ohio Railroad and to ship his goods by said railroad, then the plaintiff is not entitled to make any recovery against the defendant on account of the goods being shipped by the Baltimore & Ohio Railroad and not by the Pennsylvania Railroad.  (*Refused.*)

The cause was argued before BOYD, C. J., PEARCE, BURKE and STOCKBRIDGE, JJ.

*Leigh Bonsal,* for the appellant.

*Charles Claggett* and *William L. Marbury,* for the appellee.

BURKE, J., delivered the opinion of the Court.

In the year 1907 the appellee, who is a clergyman of the Protestant Episcopal Church, was rector of St. Mary's Church at Roland Park, Baltimore county.  His health was bad, and it became necessary for him for that reason to relinquish his work.

The appellant is a corporation engaged in the storage business in the City of Baltimore, and the appellee in the summer of 1907 entered into a contract with it whereby it undertook to remove for compensation all his household effects from the rectory and store them in its warehouse.

The appellee left Baltimore, and after traveling in this country and in Europe returned in the fall of 1910, and took up his residence in Washington, D. C.  When his household effects, which had been in the possession of the appellant during his absence, were delivered at his residence in Washington, under the circumstances hereafter stated, it was found that some of them were badly damaged.  It was also discovered that some articles were not delivered, and they seem to have been lost.  The appellant denied liability

for the loss and damaged articles, and the appellee sued 'it in the Superior Court of Baltimore City and recovered a judgment for $523.00. The appeal before us was taken by the defendant from that judgment.

The amended declaration, upon which the case was tried, contained four counts. The first count charged that the defendant was engaged in the storage business, and that for a consideration it agreed to store and safely keep in its warehouse in Baltimore City certain goods and chattels, etc., of the plaintiff until the same should be called for by the plaintiff, and then safely deliver the same to the plaintiff at his request; but through its neglect to take proper care of said goods and chattels while the same were in its warehouse, they became greatly broken, damaged, and destroyed and some of them were lost. The second count charged negligence on the part of the defendant in hauling the goods to a railroad car in Baltimore City in pursuance of its undertaking with the plaintiff, and in loading the goods in the car, and as a result of that negligence the goods were damaged and some lost. The third count is here transcribed:·

"And for that, in the early part of December, in the year 1910, the defendant, for compensation, undertook with the plaintiff, in compliance with his instructions, to forward to him at Washington certain goods and chattels, comprising sundry articles of silverware, furniture, china, mats and other household effects belonging to the said plaintiff, which the defendant had on storage in its warehouse in Baltimore City; that the plaintiff positively commanded and instructed the defendant to engage a forty-foot car on the Pennsylvania Railroad line and ship the said goods and chattels by means of the same to him in Washington; that the defendant acted upon such undertaking, but not regarding its· duty to the said plaintiff, afterwards in the early part of the month of December aforesaid, at Baltimore City aforesaid, in disobedience of the plaintiff's orders, did not ship the said goods and chattels or any part of the same by means of a forty-foot car on

the Pennsylvania Railroad line, but wrongfully and improperly shipped all of said goods and chattels in two smaller cars on the Baltimore & Ohio Railroad line; that by and through the said wrongful and improper conduct of the said defendant and its servants, the said goods and chattels became and were greatly broken, damaged and destroyed, and some of them lost, and the plaintiff sustained great loss thereby."

The fourth count charged that in 1910 the defendant undertook to carry said goods from its warehouse in Baltimore City to the plaintiff's home in Washington, and that through its negligence in and about the transportation of the goods they were damaged and some lost. The main questions in the case arise under the first and third counts.

It will be observed that the cause of action alleged in the first count is the breach of duty by the defendant in its capacity as warehouseman, and in the third count is the defendant's violation or disobedience of the plaintiff's directions as to the shipment of his goods. The case was tried upon the joinder of issue upon the general issue pleas.

The evidence adduced at the trial on behalf of the plaintiff tended to establish the following facts: That the appellant undertook to remove and did remove all the plaintiff's household effects from his residence at Roland Park, and that the following articles were lost, and have never been returned, viz: a Bas Relief by Cooper, valued at $250.00; a Bronze Bas Relief; a pair of large black andirons and all of the kitchen utensils,—a coffee grinder, a silver chafing dish, a complete set of china dishes and aluminum cook vessels, and an ice cream freezer; that when delivered, a dining room table, a centre table, a large oak table, sixteen dining room chairs upholstered in leather, carved chairs, brass beds, a leather lounge, carved book cases, desks, chairs, china closets, etc., were found to be seriously damaged; that when these articles were delivered into the possession of the defendant they were in good condition, and were not dam-

aged in any way; that the injury to the leather lounge had
been done at the warehouse of the defendant; that the arti-
cles were not removed in a careful manner from the appel-
lees residence by the appellant's servants; that some of the
things had been struck against the walls and banister, and
dropped on the floor; but that the removal of the goods by
the Security Storage Company of Washington from the rail-
road's station in that city to the appellee's home was care-
fully done, and there is no evidence in the record to show
that any of the losses or injuries complained of could be
attributed to the Washington Company; that some pieces of
the damaged furniture had been repaired at a cost of $80.00
but that they were not as good after the repairs as they were
before the injury.

The plaintiff testified that his positive instructions to the
defendant were to ship his goods to him in one large car
over the Pennsylvania Railroad Company. His explanation
of why he wished them shipped in a single car on that road
was as follows:

Q. In shipping them in a single car is it necessary to have
the goods packed?

A. That was my reason for having them sent in one car-
load as there would be no necessity whatever of having them
packed, no reason for having the goods packed; at least that
was my experience in having them shipped over the Penn-
sylvania Road from New York to Philadelphia and from
Philadelphia back to New York and from New York to Bal-
timore; on those three trips they had always gone in one
car and they were never packed, except that ordinary care
was used in packing them in the car; I saw no reason why
they should not come the short distance from Baltimore to
Washington under the same circumstances."

The defendant shipped the goods in two smaller cars over
the Baltimore & Ohio Railroad consigned to the plaintiff in
the care of the Security and Storage Company of Washing-
ton, and sent the bill of lading to that company with instruc-

tions not to deliver the goods until it was paid the amount of the defendant's bill, to wit: $200.00. When the furniture reached his home, the plaintiff noticed its damaged condition, and protested against paying the bill; but was compelled to do so before the Washington Company would make delivery. There was no contention that the plaintiff ever directed, assented to, or acquiesced in the shipment in two cars over the Baltimore & Ohio Railroad.

The plaintiff requested William H. Houghton, an experienced and competent expert in every department of the furniture business, to come to his house and examine his goods. He pointed out to Mr. Houghton each piece of the damaged property, which Houghton examined and valued in its damaged condition, and at the trial he testified to the value of each damaged article. He was present in Court and heard the plaintiff's testimony as to the character of the valued goods and their condition at the time they were delivered to the defendant, and, assuming the plaintiff's testimony in this respect to be true, he gave his opinion as to their value at the time they were received by the defendant. This testimony was offered to aid the jury in estimating the damages to the furniture. This testimony was objected to by the defendant and its admission constitutes the second bill of exception. This evidence, upon the authority of many cases, was properly admitted. *Negro Jerry* v. *Townshend,* 9 Md. 145; *Sattler* v. *Belt R. R. Co.,* 102 Md. 595; *Western Union Tel. Co.* v. *Ring,* 102 Md. 677.

After a careful examination of the record, we hold that the plaintiff offered evidence from which the jury could have reasonably found the following facts: First, that the property lost was delivered to the defendant at the plaintiff's residence at Roland Park; secondly, that the furniture which was delivered to the plaintiff at his residence in Washington in a damaged condition was delivered to the defendant at Roland Park in good condition; thirdly, that the defendant violated the instructions of the plaintiff as to the shipment of the goods in two respects, (*a*) in shipping them by the

Baltimore & Ohio Railroad instead of the Pennsylvania
Railroad in one large car; (*b*), and in shipping in two
smaller cars over the Baltimore & Ohio Road; and fourthly,
that by the arrangement which it made with the Washington
Storage Company the defendant retained possession and con-
trol of the goods until they were delivered to the plaintiff;
fifthly, that most of the damage was done in the course of
transportation over the Baltimore & Ohio line.

The defendant offered evidence tending to show that the
missing property was not received at its warehouse in Balti-
more, and that much of the property which it did receive was
damaged; that it exercised due care with respect to the prop-
erty while it was in its possession, and was guilty of no neg-
ligence in hauling and packing the goods in the cars of the
railroad company.    Mr. H. Z. Greer, the manager of the
defendant's storage department, in a letter to the plaintiff
dated February 18th, 1911, said: "We feel that we have
taken more than ordinary amount of care with this ship-
ment, and we do not feel that we are responsible for the
damage to any of the pieces, as everything was loaded into
the cars in exactly the same condition as they were when
received from your residence, and our responsibility ceases
when we take the railroad company's receipt in the form of
a bill of lading."    The defendant informed the plaintiff that
the goods should be properly packed for shipment, whether
in carload lots or not, as household goods were handled
roughly in transit; but, as we have stated, this did not accord
with the plaintiff's experience in this regard, and he declined
to incur an expense which he regarded as unnecessary.    It
is admitted by the defendant that the plaintiff instructed it
to ship the goods in one large car over the Pennsylvania
road.    Mr. Hamilton, the secretary of the defendant, testi-
fied that he knew Mr. Denys wanted a forty-foot car on the
Pennsylvania Railroad, and Mr. Greer testified that the
plaintiff "had requested that we obtain from the Pennsyl-
vania Railroad one forty-foot car in which to load his goods."
But Mr. Hamilton further testified that the plaintiff acqui-

esced in the shipment of the goods by the Baltimore & Ohio road. His testimony on this subject was that he called the plaintiff on the telephone, and told him that a forty-foot car could not be gotten from the Pennsylvania Railroad, but that the defendant would try the Baltimore & Ohio Railroad; and that the plaintiff acquiesced in that arrangement. Mr. Greer, who was present at the time of this telephonic communication testified as follows: "I could tell by Mr. Hamilton's answers to him about what their conversation must be; he told him at my suggestion after learning we could not secure a forty-foot car over the Pennsylvania road, he asked Mr. Denys if there was any objection to shipping the goods over the B. & O., and we would try to secure a forty-foot car; still judging or at least inferring that Mr. Denys' answers must have been in the affirmative, Mr. Hamilton said, 'all right, we will do that, ship by the B. & O.'" Mr. Denys testified that he did not recall such a conversation, and that his correspondence and instructions were to ship by the Pennsylvania road. All the controverted questions of fact were submitted to the jury under the instructions granted.

At the conclusion of the whole case the Court granted two prayers—the first and third—on the part of the plaintiff. The first prayer instructed the jury that the defendant was liable to the plaintiff for any loss of or injury to, the goods, consisting of the furniture and other household effects belonging to the plaintiff, and being in the plaintiff's residence on Roland avenue at the time when the defendant undertook to take said goods on storage, in or about July, 1907, due to the failure on the part of the defendant company, or its agents, to exercise due care in collecting and transporting said goods from plaintiff's said residence on Roland avenue to the defendant's warehouse on North avenue, or to the failure on the part of the defendant company, or its agents, to exercise due care in the storage, packing and custody of said goods in the defendant's warehouse, or in any subsequent handling of said goods by the defendant.

And if the jury found that the defendant company when called upon by the plaintiff to deliver said goods for shipment failed to deliver any of them, or delivered any of them in a damaged condition which were not so damaged when received by the defendant, or its agents, at the plaintiff's dwelling on Roland avenue, then the presumption was that such loss of or injury to said goods was caused by the failure on the part of the defendant company, or its agents, to exercise ordinary care to prevent said loss or injury; and the burden was upon the defendant company to establish the contrary by affirmative proof to the satisfaction of the jury.

This prayer was based upon the first count of the declaration, and announced a correct principle of law. A warehouseman, being a mere bailee, is bound only to ordinary care, and is responsible for losses or damages caused by ordinary negligence. This is the measure of responsibility declared in the first paragraph of the prayer. The evidence tended to show that the goods, when delivered to the defendant were in good condition and that some of them were re-delivered in a bad condition and that others of them were lost. In such a state of facts the law presumes negligence on the part of the bailee and throws upon him the burden of accounting for the condition of the property and of the missing articles. The reason for this rule is that since the bailee is in the possession of the property when the injury or loss occurs he ought to be in a better position to account for the condition or loss of the property than the bailor. "We hold it to more reasonable rule," said the Court in *Cumins* v. *Wood*, 44 Ill. 416, "when the bailor has shown he stored the goods in good condition and they were returned to him in a damaged state, or not returned at all, that the law should presume negligence on the part of the bailee and impose on him the burden of showing he has exercised such care as was required by the nature of the bailment." *Hoeveller et al.* v. *Myers et al.,* 158 Pa. St. 461.

The third prayer, which is here transcribed, was framed under the third count:

"The plaintiff prays the Court to instruct the jury that if they find from the evidence that the plaintiff, Rev. F. Ward Denys, on or about the 27th of July, 1907, delivered to the defendant, the Security Storage and Trust Company, of Baltimore City, the furniture and other goods mentioned in the declaration, to be kept on storage for compensation, and held subject to the plaintiff's order. And that the defendant was engaged in the business of keeping furniture and other articles of the kind mentioned in the declaration on storage, and delivering the same upon the orders of the owners thereof, and that the defendant kept the goods in question until on or about the 10th day of December, 1910, when the plaintiff directed the defendant to ship said goods to him, the plaintiff, in the City of Washington, D. C., by, upon and over the lines of the Pennsylvania Railroad Company, and in a single car of the Pennsylvania R. R. Co. That the defendant accepted the employment, and undertook, for compensation in money, as agent of the plaintiff, to carry out said directions, but that instead of shipping said goods in a single car of the Pennsylvania R. R. Co., it shipped the same on two cars over the lines of the Baltimore & Ohio R. R. Co., without the plaintiff's knowledge that said goods were going to be shipped in two cars, or over the Baltimore & Ohio Railroad, and employed the Security Storage Company, of Washington ·City, to take said goods from the cars of the Baltimore & Ohio Railroad in Washington, and deliver the same to the plaintiff's house in said city, with instructions that at the time of delivering said goods it, the said Security Storage Company, of Washington, should collect from the plaintiff the amount of the said defendant company's bill against the plaintiff for shipping said goods, as well as the amount to be paid to the said Security Storage Company, of Washington. And if they further find from the evidence that said goods were in good condition when they were so delivered to the cars of the said

Baltimore & Ohio Railroad Company, and that certain of the said goods were never delivered to the plaintiff at his house in Washington, and others of said goods were delivered in a damaged condition, then the defendant company is liable to the plaintiff for the actual value of the goods not delivered, and also for the difference between the actual value of the goods delivered in an injured condition and their value before said injuries, and also any expense to which the said plaintiff was put as a direct result of said damage and loss, and the verdict of the jury should be for the plaintiff for the amount equal to the actual value of the goods not delivered and also for the difference between the actual value of the goods delivered in an injured condition and their value before said injuries. But if the jury shall find that the plaintiff assented to the shipment of his goods over the Baltimore & Ohio Railroad, and if they find said goods were shipped in two cars of the Baltimore & Ohio Railroad, and were not exposed to greater risks than if they had been shipped in a single car, the defendant can not be held responsible for any loss or injury sustained by reason of the transportation over the Baltimore & Ohio Railroad."

The general rule seems to be well settled that where an agent violates the directions of his principal as to the shipment of goods he assumes the risk of injuries to them occurring in the course of the unauthorized transportation. This liability grows out·of the legal principles governing the relations of principal and agent. 1 *Parsons on Con.,* sec. 69; *Davis* v. *Garrett,* 6 Bingham, 718; *Adams* v. *Robinson,* 65 Ala. 586; *Johnson* v. *N. Y. Cen R. R. Co.,* 33 N. Y. 610. This is the principle upon which the third prayer was framed. The concluding portion of the prayer, which was an amendment added by the Court, was most favorable to the defendant, and, perhaps, granted it more than it was entitled to ask under the law.

The second, third, fifth and sixth prayers which were granted on behalf of the defendant, placed its· whole case

before the jury in the most favorable way. While the plaintiff may have some reason to complain of the amendments made by the Court, surely the defendant was not injured thereby. The defendant's first, fourth, seventh, eighth and ninth prayers were properly refused. The first prayer asked the Court to direct a verdict for the defendant. Apart from all other considerations, this prayer could not have been granted, because the plaintiff had positively testified that a large leather lounge had been injured while in the defendant's possession. The fourth prayer was based upon the theory that some of the missing articles had been stolen while in the custody of the defendant. The plaintiff made no such claim in his pleadings, nor did he offer any evidence of theft. Neither did the defendant, and, therefore, it would have been improper to grant this prayer. The seventh, eighth and ninth prayers ignored entirely the assumption of risk by the defendant flowing from its disobedience of the plaintiff's instructions, and were therefore properly refused.

> *Judgment affirmed, with costs to the appellee above and below.*