# JOHN GOULD LECKIE, Trading as Leckie's Storage and Moving Co., et al.

*vs.*

# EDDIE CLEMENS.

*Warehouseman—Loss of Goods Stored—Burden of Proof.*

In an action against a warehouseman for the loss of articles of clothing stolen from the warehouse, an instruction that if the jury find for plaintiff the measure of damages is the value of the articles which the jury find were stolen at the time they were stolen, including the damage to the trunk in which they were, states the proper measure of damages.                    p. 266

That an instruction permitted the jury in their discretion to allow interest upon the amount of damage sustained, although no interest was claimed, is immaterial, when the fact that the verdict was for the exact amount that was claimed in the bill of particulars shows that no allowance was made for interest.
                                                             p. 266

Under Acts 1910, Chapter 406 (Code, Vol. 1, Art. 14A), Sections 8, 21, providing that, in case a warehouseman refuses or fails to deliver the goods in compliance with the demand of the holder of a receipt therefor or the depositor, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal, and making the warehouseman liable for any loss or injury caused by a failure to exercise reasonable care, he has the burden of showing that any damage, destruction or loss was not caused by his negligence.        pp. 267-269

Where certain testimony in behalf of plaintiff was admitted subject to exceptions, but the record fails to disclose that defendant thereafter asked that it be excluded, and no such request was made, there was no ruling thereon to which he could or did except, and the question of the admissibility of such testimony is not properly before the Court of Appeals.          p. 273

In an action against a warehouseman for the loss of goods belonging to plaintiff which were stolen from the warehouse,.

the admission of the answer of a witness to a question as to the condition of the door of the warehouse at a time other than that at which the theft occurred was not reversible error, when such answer showed that the witness did not know the condition of the door at that time.                                                p. 274

*Decided December 9th, 1919.*

Appeal from the Baltimore City Court (DUFFY, J.).

The following prayers were among those offered:

*Plaintiff's Sixth Prayer*—The jury is instructed that the measure of damages in this case shall be the value of the suits, dresses, shoes and other contents of the trunks at the time the goods were stolen including the damage to said trunk with interest in their discretion from November 17th, 1915.

Which the Court modified as follows:

The jury is instructed that if they find for plaintiff that the measure of damages in this case shall be the value of the suits, dresses, shoes and other contents of the trunk which the jury find from the evidence were stolen at the time the goods were stolen including the damage to said trunk with interest in their discretion from the date of the larceny. (*Granted as modified.*)

*Defendant's Second Prayer*—The defendant prays the Court to instruct the jury that the burden of proof is upon the plaintiff to show causal connection between the defendant's acts or omissions (if they shall so find) to constitute negligence and the injuries complained of.  (*Refused.*)

*Defendant's Fifth Prayer*—The defendant prays the Court to instruct the jury that, in order for the plaintiff to recover in this case, the plaintiff must prove that there was a lack of reasonable care in hauling and storing the goods of the plaintiff on the part of the defendant; and if there be the absence of such proof, the verdict must be for the defendant.  (*Refused.*)

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*Tazewell T. Thomas,* for the appellants.

*Marcus A. Tregor* and *George A. Finch,* for the appellees.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment recovered by the plaintiff, the appellee in this Court, against the appellant for the loss of goods stored in the defendant's warehouse in the City of Baltimore. The record contains seven exceptions to the rulings of the Court. One upon the prayers and the others to the admission or rejection of testimony.

The plaintiff offered six prayers, all of which were refused as offered, but his sixth prayer was granted after modification by the Court. This modified prayer was properly granted, as it correctly states the measure of damages to which the plaintiff was entitled in the event of a verdict in his favor. As to the objection urged against this prayer, that it permitted the jury in their discretion to allow interest upon the amount of damages sustained by the plaintiff when none, as alleged, was claimed by him, it may be said that as a matter of fact no interest was allowed by the jury in the verdict rendered by it. A bill of particulars was filed containing a number of items aggregating $502.50. The plaintiff testified specifically to most of these items and concluded by saying that his losses totaled $502.50. It was for this exact amount that the jury returned its verdict, showing that no allowance was made for interest.

The defendant offered five prayers. Of these his third prayer was granted as modified. The others were refused. The Court by the defendant's third prayer, as offered, was asked to instruct the jury that "if they find from the evidence that the loss to the plaintiff as shown by the evidence (if they so find) was occasioned by theft, the verdict must be for the defendant unless they shall further find from the evidence

that in storing said goods the defendant failed to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, and that such failure was the cause of said loss." The Court modified this prayer by adding thereto "and the burden is on the defendant to show by the evidence that in storing said trunk and contents he did use such care."

The effect of the modification of this prayer is that it places upon the defendant the burden of showing that he exercised the care required of him under this prayer in storing said trunk and contents in his warehouse. Such burden, we think, was properly placed upon him.

This question has been before the Courts many times with the result that in some jurisdictions it has been held that where the property is damaged, destroyed or lost, the burden is upon the bailee to show that the same was not caused by his negligence, while in other jurisdictions it has been held that the burden is upon the bailor to show that the loss sustained by him was caused by the negligence of the bailee. This Court, it seems, up to the time of the passage of the Act of 1910, Chapter 406, designated as Article 14-A (Code, Vol. 1, p. 317) adopted the view last expressed, that the burden was upon the bailor to show the negligence of the bailee. *Hamilton* v. *McGee,* 19 Md. 43; *American District Telegraph Co.* v. *Walker,* 72 Md. 454; *Refrigerator Co.* v. *Kreiner,* 109 Md. 361; *The Darby Co.* v. *Hofberger,* 111 Md. 84.

In *Refrigerator Co.* v. *Kreiner, supra,* the action was brought to recover the amount of loss suffered by the plaintiff in the deterioration in quality of his poultry while in cold storage in the warehouse of the defendant, caused, as alleged, by the negligence of the defendant in failing to exercise due and proper care in the management of its storage warehouse. This Court in that case said: "The principal objection urged by the defendant's counsel is to the granting of the plaintiff's second prayer. By that instruction the jury are told

that if they find certain facts therein recited, 'then the law presumes that the damage to said poultry was caused by the negligence of the defendant.' The objection urged to this prayer is that it puts the burden of proof of negligence upon the defendant.

"Several. authorities outside of this State are cited by the attorneys for the respective parties in support of and against the correctness of this prayer. But we think the substantial question has been passed upon and settled in at least two cases heretofore decided by this Court. *Hamilton* v. *McGee, supra; American District Telegraph Co.* v. *Walker, supra."* The Court in that case, following the decisions in those cases, held that the burden of showing negligence on the part of the bailee was upon the bailor.

After the decisions in the above cited cases, the Legislature at its session of 1910 passed the Act above referred to, constituting said Article 14-A. Section 21 of that Article provides that "a warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care"; and Section 8 of said Article provides that "a warehouseman, in the absence of some lawful excuse provided by Sections 1 to 60, is bound to deliver the goods upon a demand made either by the holder of a receipt of the goods or by the depositor," if the demand is accompanied with the requirements therein named; and "in case the warehouseman refuses or fails to deliver the goods in compliance with the demand of the holder or depositor so accompanied, *the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal."*

In the later case of the *Security Storage Co.* v. *Denys,* 119 Md. 330, the first case decided by this Court after the passage of the Act of 1910, which was an action brought to re-

cover for damages to and loss of goods stored by the plaintiff in the defendant's warehouse, the Court by the plaintiff's first prayer instructed the jury that if they should find the facts therein stated and should also find "that the defendant company when called upon by the plaintiff to deliver said goods for shipment failed to deliver any of them, or delivered any of them in a damaged condition which were not so damaged when received by the defendant, or its agents, at the plaintiff's dwelling on Roland avenue, then the presumption was that such loss of or injury to said goods was caused by the failure on the part of the defendant company, or its agents, to exercise ordinary care to prevent said loss or injury; *and the burden was upon the defendant company to establish the contrary by an* affirmative proof to the satisfaction of the jury."

This Court in sustaining that prayer, speaking through JUDGE BURKE, said, "the evidence tended to show that the goods, when delivered to the defendant, were in good condition and that some of them were redelivered in a bad condition, and that others of them were lost. In such a state of facts, the law presumes negligence on the part of the bailee and throws upon him the burden of accounting for the condition of the property and of the missing articles. The reason for this rule is that since the bailee is in the possession of the property when the injury or loss occurs, he ought to be in a better position to account for the condition or loss of the property than the bailor. 'We hold it to be a more reasonable rule,' said the Court in *Cumins* v. *Wood,* 44 Ill. 416, 'when the bailor has shown he stored the goods in good condition and they are returned to him in a damaged condition, or not returned at all, that the law should presume negligence on the part of the bailee and impose on him the burden of showing he has exercised such care as was required by the nature of the bailment.' *Hoeveler et al.* v. *Myers et al.,* 158 Pa. St. 461."

It would, therefore, seem that the rule in this State, as now established, places upon the bailee the burden of proving due care, or overcoming the presumption of negligence. The goods are in the possession of the defendant or bailee, and usually upon his premises at the time the injury or loss occurs, and he knows, or is presumed to know, not only the condition of the premises, but also what is going on there in respect to such goods, and thus he is in a far better position to explain or account for their injury or loss than the bailor who, generally speaking, has no such information, and at times cannot acquire it. In many cases the bailee might be guilty of the grossest negligence and yet, because of the character of his exclusive possession and custody of the goods, it would be almost impossible for the bailor to show such negligence; while on the other hand, the bailee, with the information ordinarily possessed by him, could show without difficulty, in most cases, that he had exercised proper care in respect to such goods, if such was the fact, and be relieved of all libaility.

The defendant's first prayer asked that the case be taken from the jury because of a want of legally sufficient evidence entitling him to recover. Upon the evidence disclosed by the record and in view of what we have already said, the Court very properly refused this prayer.

The defendant's second prayer was also properly refused.

There was no reversible error in the Court's refusal to grant the plaintiff's fourth prayer upon the measure of damages, as the measure of damages was fully and properly set forth in the plaintiff's sixth prayer.

The defendant's fifth prayer was also properly refused.

This brings us to the exceptions to the admission or rejection of testimony. Owing to the unusual manner in which these exceptions are taken, or in which they appear in the record, it is difficult for us to consider and pass upon them.

The entire testimony in the case, both that of the plaintiff and defendant, is found under the heading or caption "De-

fendant's First Bill of Exceptions." Immediately following
the evidence, all of which as we have said, is under the afore-
going caption, is found the following entry: "The testimony
upon the part of the plaintiff and defendant having been
closed, the plaintiff offered the following six prayers." The
plaintiff's prayers then follow, and thereafter is found the
entry, "And the defendant offered the following five prayers."
The ruling of the Court upon the prayers is then made, the
defendant's first bill of exceptions. Then comes the excep-
tions to the evidence numbered in regular order, commencing
with the second and ending with the seventh.

The second bill of exceptions, or the first to the ruling
upon the evidence, is as follows:

> "At the trial of this case, the plaintiff offered to show
> by the witness, Sergeant Wm. L. Scrivner the larceny
> in August, 1915, from the warehouse in question of
> one large copper kettle, not included or in any way
> connected with the goods sued on; his testimony is fully
> set forth in the first bill of exceptions, and this testi-
> mony is made a part of this bill of exceptions to the
> same extent as though the testimony were again herein
> set forth.
>
> "The defendant excepted to such part of said testi-
> mony on the ground that there was no claim made in
> this suit for a copper kettle. The Court overruled the
> exceptions of the defendant to the admissibility of that
> part of said testimony relating to the larceny of the
> copper kettle, and permitted the questions to be asked
> and answered, and the defendant excepted to the said
> ruling of the Court."

It will be seen that the exception goes to the admission of
testimony as to the larceny of a copper kettle, because as
stated, there was no claim made in this suit for a copper ket-
tle. It will be necessary for us to examine the testimony of
Scrivner, and quote from it to some length in considering this
exception. Scrivner was at the time he testified and for
fifteen years prior thereto a policeman of the City of Balti-

more.  He was asked by plaintiff's counsel: "Did Mr. Leckie (the defendant) or anyone in his behalf ever report to you a robbery of his house, or his warehouse, of any goods being stolen out of there? A. Yes, sir.  Q. When? A. Why, my reports here——  Q. Are those reports signed by you? A. Yes, sir.  Q. Who made the report to you? A. Mr. Leckie reported it to me about a copper kettle being stolen out of there.  Q. When was that? A. That was August 13th.  Q. What year? A. 1915; September 7th, 1915.  Q. Wait a minute, when was the copper kettle stolen, on what date? A. Sometime between August 13th and September 1st.  Q. Well, did the copper kettle belong to him or one of the people who had goods stored there? A. It was supposed to be stored there."  The counsel for the defendant then interrupted saying: "I would like to ask why this particular testimony in reference to some copper kettle is introduced.  There is no claim made against us for a copper kettle."  Counsel for the plaintiff was then asked by the Court the object of such testimony.  He stated the object for which it was asked, and the Court announced that he would admit it, subject to exceptions.

It will be observed that the witness was permitted to answer the questions concerning the larceny of the kettle, giving the date at which it was said to have been stolen, as well as the fact that it was the property of someone who had stored it in the warehouse, before even the inquiry was made by the counsel for the defendant as to the object of such testimony.

It appears from the record that such testimony was admitted subject to exceptions, but the record fails to disclose that the defendant thereafter asked that it be excluded, and as there was no such request made, there was, of course, no ruling by the Court thereon to which he could or did except. The witness was permitted to conclude his testimony without further reference on the part of defendant's counsel to the admission of the testimony.

Md.]

The question whether or not the testimony as to the larceny of the kettle was correctly admitted is not properly before us for our consideration.

The witness, after testifying as to the larceny of the kettle, was examined as to the condition of the building in which the goods were stored. He was asked: "Do you know how the building is operated or constructed, the front and the back, and etc.? A. The building at one time was a livery stable. Q. A livery stable? A. Yes, sir; used as such, and it has a large double door in the back, I think, and one in front leading out into a ten or twelve foot alley in the back, it sides on Winchester and fronts on Carrollton avenue. Q. Do you know the condition of that door in 1915, along about September, October or November? A. No, I could not say now. Q. Have you examined that door lately? A. I have not worked in that section for the last three years.". The Court then asked: "Did you examine these doors at the time this report was made to your station? A. No, sir." Mr. Thomas, the counsel for the defendant, then said: "I think we have a right now to object seriously to any further testimony on this line." Counsel for the plaintiff then said that it was his purpose to show the condition of the premises, and the Court asked: "Cannot they show the condition of the premises?" And the counsel for the defendant replied: "At the time of this theft, yes, your honor." The Court then said: "This report was made to him sometime in August or September, 1915. The theft occurred, according to the statement made by the defendant, in March, 1916." Whereupon the counsel for the plaintiff said: "But we will show that that is not true. We will show that this theft in question occurred in October, 1915, just a month after the copper kettle was stolen." The Court then said: "I will admit this." And thereupon the defendant's counsel noted an exception, and upon such notation a bill of exceptions, appearing at the conclusion of all the testimony, was prepared and signed, in which it is said that "at the trial of this case, the

plaintiff offered to show by the witness Sergeant Wm. L. Scrivner the condition September 7th, 1915, of the premises in question; * * * on the ground that it was not proper to show the condition of the premises on that date alone."

It is somewhat difficult to ascertain the evidence to which the defendant noted his exceptions. The witness had stated that he did not know the condition of the door of the warehouse in September, October or November, and when asked by the Court if he examined the door at the time the report was made to his station, he answered, "No, sir." If this was the testimony the Court had reference to, and it seems that it was, when he said, "I will admit this," certainly such evidence could not have injuriously affected the defendant, and the same may be said of the evidence that followed, for the witness stated that he could not recall whether the doors were fastened inside or not, and could not say whether there were any windows in the back part of the building. He, in fact, knew little of the condition of the building.

Therefore, should we regard this question as properly presented by the exception noted, we find no reversible error in the Court's rulings thereon. We have also carefully examined the remaining exceptions and without discussing them, will state that we find no errors in the rulings of the Court thereon.

The judgment of the Court below will be affirmed.

*Judgment affirmed, with costs.*