COMMODITIES RESERVE CORPORATION; Royal Insurance Company of America; Klein Brothers, Inc.; Highlands Insurance Company, Appellants,

v.

M/S ROUMANIA, her engines, tackle, boilers, etc.; G.P. Calliminopulos; Atlantic & Gulf Stevedores, Inc., Defendants,

HELLENIC LINES, LTD., Defendant,

v.

ATLANTIC & GULF STEVEDORES, INC., Third-Party Defendant,

BELT'S WHARF WAREHOUSES, INC., Appellee,

v.

ATLANTIC & GULF STEVEDORES, INC., Third-Party Defendant,

AJC INTERNATIONAL, INC., Appellee,

v.

ORKIN EXTERMINATING, INC., Appellee,

and

B & H Associates, Inc., Third-Party Defendant.

COMMODITIES RESERVE CORPORATION; Royal Insurance Company of America; Klein Brothers, Inc.; Highlands Insurance Company, Plaintiffs,

v.

M/S ROUMANIA, her engines, tackle, boilers, etc.; Calliminopulos; Atlantic & Gulf Stevedores, Inc., Defendants,

HELLENIC LINES, LTD., Defendant,

v.

ATLANTIC & GULF STEVEDORES, INC., Third-Party Defendant,

---

BELT'S WHARF WAREHOUSES,
INC., Appellee,

v.

ATLANTIC & GULF STEVEDORES,
INC., Third-Party Defendant,

AJC INTERNATIONAL, INC.,
Appellant,

v.

ORKIN EXTERMINATING,
INC., Appellee,

and

B & H Associates, Inc.,
Third-Party Defendant.

Nos. 85–1801, 85–1802.

United States Court of Appeals,
Fourth Circuit.

Argued July 16, 1986.

Decided Nov. 28, 1986.

David W. Skeen, James D. Skeen, Wright, Parks, Constable & Skeen, Baltimore, Md., for appellant.

Scott A. Hunsicker, Prem & Dumbler, Baltimore, Md., on brief, for Belt's Wharf Warehouses, Inc. for appellee/cross appellee.

Michael J. Jack, Howard G. Goldberg, Smith, Somerville & Case, Baltimore, Md., for appellee/cross appellant AJC Intern., Inc.

Andrea T. Shandell, Joel M. Savits, Jordan, Coyne, Savits & Lopata, Washington, D.C., for appellee/cross appellee Orkin Exterminating Co., Inc.

Before RUSSELL, WIDENER and CHAPMAN, Circuit Judges.

WIDENER, Circuit Judge.

## CERTIFICATION ORDER
### TO THE HONORABLE CHIEF JUDGE AND JUDGES OF THE COURT OF APPEALS OF MARYLAND

This case involves a claim for damages to some 40,000 bags of Turkish garbonzo beans (chick peas) due to insect infestation while stored at a Belt's Wharf Warehouses facility in Elkridge, Maryland. The plaintiffs are the owners of the Turkish garbonzo beans and their insurers. The defendants are the warehouseman and the owners

of some Mexican garbonzo beans stored in the same warehouse.[1]

Plaintiffs sued the warehouseman for breach of contract, negligence and misrepresentation in its storage of the Turkish beans. Plaintiffs claim that their beans were in good order and condition when they arrived at the warehouse for storage but that while under the care and custody of the warehouseman the Turkish beans became infested with cowpea weevils. Plaintiffs sued the Mexican beans' owner for negligence in knowingly permitting its insect-infested Mexican beans to be stored in the warehouse with other beans and failing to inform the warehouseman of the infestation.

Plaintiff's theory of liability on the part of the warehouseman for negligence and breach of contract was based upon evidence tending to show that one shipment of Turkish garbonzo beans (7000 bags) arrived in good condition at the Elkridge warehouse in March 1981. A larger second shipment (30,000 bags) was then arranged, with plaintiffs' representatives traveling to Turkey to inspect these beans. One 10,000 bag lot was rejected by plaintiffs in Turkey for numerous reasons, including past weevil infestation. An acceptable replacement lot was found by plaintiffs in Turkey for the rejected beans. This second shipment of Turkish beans arrived at the warehouse in June 1981.

The parties soon began discussing fumigation procedures for some beans to be exported to foreign countries. No such fumigation was immediately done, however. In September 1981, the warehouseman notified plaintiffs that a moth had been seen in the warehouse. The warehouse was subsequently fogged but active weevils were later found in the Turkish beans. A substantial amount of the Turkish beans were lost because of weevil infestation.

The warehouseman had also stored another batch of garbonzo beans in the same facility with the Turkish beans. These were Mexican garbonzo beans and previously had been rejected by a canning company because they were infested with cowpea weevils. Following the discovery that the Mexican beans were infested, those beans were fumigated. The Mexican beans arrived for storage with the warehouseman at approximately the same time the first batch of Turkish beans arrived. The Mexican beans had been shipped out of the warehouse, however, before the second batch of Turkish beans arrived.

The warehouseman defended on the ground that the Turkish beans were infested with the cowpea weevil before they arrived at the warehouse for storage. The warehouseman argues that the batch of Turkish beans which was rejected by the plaintiffs was actually included in the lot purchased by the plaintiff. That infested lot led to the contamination of the rest of the Turkish beans stored at the warehouse, the argument goes.

Following the taking of evidence, the magistrate concluded that the evidence pointed to two possible sources of the infestation, the Mexican beans and the Turkish beans. If the evidence showed that the source was the Mexican beans, he opined, then the plaintiffs must prevail, but, if the evidence showed the source to be the Turkish beans, then the warehouseman must prevail. After reviewing all of the evidence, the magistrate found that the evidence did not preponderate in favor of either the Turkish or the Mexican beans but that the evidence as to the source of the infestation was in equipoise. The magistrate relied upon *J. Aron & Co. v. Service Transportation Co.*, 486 F.Supp. 1070, 1073–74 (D.Md.1980), as correctly representing Maryland law as to a warehouseman's liability, that "[U.C.C. § 7–403(1)(b)] places the ultimate burden of proof upon the owner of the bailed goods, but this burden does not even arise until the warehouseman or bailee establishes some evidence which would legally excuse non-delivery. Once the bailee articulates a legally sufficient

---

1. Orkin is also included as a defendant for improper fumigation of the beans. Its liability is not part of the central issues of this certification.

excuse, a question for the trier of fact is presented and the bailor must proceed affirmatively to demonstrate negligence." Because the evidence as to the cause of the infestation was in equipoise, the magistrate ruled in favor of the warehouseman.

The plaintiffs contend that the magistrate erred in defining the warehouseman's burden of establishing lawful excuse for non-delivery under Maryland law and finding that the warehouseman satisfied that burden. Plaintiffs contend that Maryland law requires that upon plaintiffs' showing of a prima facie case, the warehouseman must prove with certainty the cause of the loss. The warehouseman, then, must show that, whatever the cause, no act or omission on its part caused the loss. The burden would then shift back to the bailor to prove negligence and all of its elements, including proximate cause. Relying upon *Security Storage and Trust Co., v. Denys,* 119 Md. 330, 86 A. 613 (1913), *Freter v. Embassy Moving & Storage Co.,* 218 Md. 12, 145 A.2d 442 (1958) and § 7–403(1)(b) of the Maryland Uniform Commercial Code, the plaintiffs contend that the warehouseman has the burden of proving actual cause of the loss or that whatever the cause, it could not have been avoided by the exercise of due care. Plaintiffs contend that § 7–403(1)(b) was not intended to relieve the warehouseman of this burden.

The warehouseman argues that the magistrate correctly applied Maryland law as reflected in *J. Aaron & Co.,* supra, and *Fox Chevrolet Sales v. Middleton,* 203 Md. 158, 99 A.2d 731 (1953), that the burden of proving negligence never shifts from the plaintiffs. The ultimate burden of proof remains at all times with the bailor.

Since the resolution of these contentions of the parties is a matter of Maryland law, which may be determinative of this case now pending in our court, we are of opinion it is proper to, and we do hereby, certify to the Court of Appeals of Maryland for decision the following questions in this case under Md.Ann.Code, Courts & Jud.Proc. §§ 12–601 and 12–603:

1. What are the respective liabilities of a warehouseman (or bailee) and the owner (or bailor) of property stored with the warehouseman for loss of or damages to such property by reason of the failure of the bailee to return the property at the termination of the bailment in the same condition as it was when delivered to the bailee and, in particular, what is the burden of proof, if any, resting on each (the bailor and the bailee) in establishing the cause of such loss or damage?

2. As between the bailor and the bailee, who carries the ultimate burden of proof when the evidence presented as to the proximate cause of the damages to the bailed property is in equipoise?

This certification is made with the concurrences of Circuit Judges RUSSELL and CHAPMAN.