FRETER *v.* EMBASSY MOVING & STORAGE CO., INC.

[No. 3, September Term, 1958.]

*Decided October 23, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Theodore H. Freter,* in proper person, with whom was *William P. Brown* on the brief, for appellant.

*John M. McInerney,* for appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant stored his lares and penates, including his collection of stamps and coins, with the appellee, a ware-

houseman in Silver Spring, from May to September 1955. When they were delivered to his new home, many items were found to be damaged from water, moisture and mildew. In the suit of the owner against the warehouseman, the trial judge, sitting without a jury, found that all of the damage had been caused by water which had entered the warehouse on August 12 and 13 (through the walls or under the door of the warehouse or both), "not by moisture or standing in a humid place" and occurred as a result of water from hurricane "Connie" "and that was an act of God, and, under an act of God, you couldn't hold the defendant responsible." The appellant urges that there was no showing that the entry of the water into the warehouse resulted wholly and unpreventably from an act of God, that the warehouseman moved the goods from one warehouse to another and so is liable, regardless of negligence, and that the warehouseman did not exercise reasonable care after the initial wetting of the goods in that it let them remain wet for almost a month.

The evidence was that the goods were received by the warehouseman in dry and good condition, that the smaller articles, including the stamps and the coins, were packed in cardboard cartons marked in crayon with a short description of the contents. When the boxes were delivered, some fell apart because the bottoms of the boxes were wet. Other boxes had dried but showed evidence of having been wet. Many stamps were damaged from water or from fungus growth as a result of remaining in a humid atmosphere, and coins were damaged by rust and corrosion. The bedding was wet and the linens were moist and mildewed. The appellant was required to utilize almost his entire yard to spread out and dry the various damp articles. There was testimony by an expert that the stamp collection was worth $1,200.00 less than when it was delivered to the storage company for safekeeping.

The owner was asked whether an officer of the warehouse company had told him that the water in the warehouse was caused by a hurricane. He replied that there had been no hurricane in Washington that summer, and Judge Lawlor said that the court would take judicial notice that a hurricane

designated as "Connie" had come up the Chesapeake Bay on August 12 and 13. The only testimony as to the cause of the entry of water into the warehouse came from employees of the company. The owner, without objection, testified that an officer of the warehouseman told him that rain came through the walls of the warehouse during the rainstorm of August 12 and 13 to such an extent that it covered the floor and goods were floating around. Other employees testified that the warehouse was a two-story brick and cinder block building, newly built for use as a warehouse, that it was built on a hill so that it was, in effect, ground level on both floors with access to each floor through double doors large enough to admit trucks. They further testified that on August 13 water "came in underneath our big doors"; that there had been no water in the warehouse before or since; that on the morning of August 13 there was an inch and a half of water on the floors and that all of the employees, including the clerical force, got mops and got the water out as quickly as possible, and that no water came through the wall. It is undisputed that the owner was not told of the wetting of his goods and had no intimation of it until they were delivered to him on September 5, and that the goods in cartons were allowed to stay as they were, no effort having been made to move them or to dry them out, because of lack of space.

Code, 1957, Art. 14A, Sec. 21, provides: "A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care." An act of God does not exonerate a warehouseman from liability for damage to goods in its care if it contributed to the damage, in whole or in part, by its negligence. *Belt's Wharf Warehouses, Inc. v. International Products Corporation,* 213 Md. 585. We may assume, without deciding, that Judge Lawlor was entitled to take judicial notice of facts known to the community at large, that is, that hurricane "Connie" came up the Chesapeake Bay on the 12th and 13th of August and

where its full force struck could be considered an act of God; *Anderson v. Argraves* (Conn.), 127 A. 2d 620; *Baltimore v. Thompson,* 171 Md. 460; but this does not relieve the warehouse company from its burden of showing that the rain and the wind, which struck Silver Spring when the center of "Connie" was passing many miles away, were so heavy as to have made the entry of water into the warehouse unpreventable. Since the goods were received by the warehouse company in dry and good condition and returned in wet and damaged condition, a presumption of negligence on the part of the company arose; *Security Storage Co. v. Denys,* 119 Md. 330; and it had the burden of overcoming this presumption. *Leckie v. Clemens,* 135 Md. 264. The warehouse company made no showing and no effort to show that the warehouse building was properly constructed so as to repel rain of a force and extent reasonably to have been anticipated in the area, (cf. *E. Coast Lines v. M. & C. C. of Baltimore,* 190 Md. 256, 279) nor did it show that any precaution had been taken in the face of warnings of heavy rain and wind to keep water from coming in under the doors of the warehouse. The assumption that hurricane "Connie" was an act of God does not dispense with the need of the warehouseman to show that its act or omission did not (a) allow the forces of nature to operate disastrously or (b) contribute to the injury. *Luther Transfer & Storage, Inc. v. Walton* (Tex.), 296 S. W. 2d 750.

We think the record shows the trial court to have been clearly wrong in determining that there was no testimony that damage to the stored goods occurred from moisture and humidity after they had become wet. No elaborate discussion is required to show that "a reasonably careful owner of similar goods", to use the words of Code, 1957, Art. 14A, Sec. 21, quoted in full above, would not have let them stay wet, in wet cardboard cartons, from August 13 to September 5, without any effort to mitigate damage already caused or to prevent further deterioration. Apart from the presumption of negligence arising from the unexplained failure to return the chattels in good condition, the course followed by the warehouseman after the initial wetting clearly was evidence

of negligence to be weighed by the trier of the facts. *Chatterton v. Boone* (Cal. App. 2d), 185 P. 2d 610.

The validity and applicability of the provisions of the warehouse receipt on limitation of liability and the appellant's claim that the warehouse company is liable, without regard to negligence, because it moved the goods from the warehouse to which they were first taken to the one in which they were damaged, will not be passed upon under Maryland Rule 885. Each point was briefly adverted to by a witness but neither can fairly be said to have been raised below and neither was decided by the trial court.

The lower court erred in entering judgment for the appellee and the case must be remanded for a new trial.

*Judgment reversed, with costs, and case remanded for a new trial.*