## JOHNSON & TOWERS BALTIMORE, INC. *v.* BABBINGTON ET AL.

[No. 248, September Term, 1971.]

*Decided March 10, 1972.*

The cause was argued before HAMMOND, C. J., and
BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and
DIGGES, JJ.

*M. Michael Maslan* for appellant.

*Arthur L. Rhoads, Jr.,* for appellees.

SINGLEY, J., delivered the opinion of the Court.

When a person or persons unknown broke into the
shop of Johnson & Towers, where large diesel engines
were being repaired, a number of tool boxes belonging to
employees, among them those of Babbington and Langen-
felder, were stolen. Babbington and Langenfelder brought
suit, complaining that the loss of the tool boxes was oc-
casioned by Johnson & Towers' negligence. From judg-
ments entered on jury verdicts for $900.00 in favor of
Babbington and for $300.00 in favor of Langenfelder,
Johnson & Towers has appealed.

It seems to be conceded that each of the two employees

was required to furnish his own tools, and that it was impracticable, because of the weight of a full tool box, to take it home at the end of the day. Instead, they were stored in the shop, at first in a locked crib, and later—and this was the case at the time of the theft—in the work area.

A word about the situation of the Johnson & Towers' shop is in order. Located at the outskirts of Baltimore on U. S. Route 40, a well traveled highway, it is a large one-story masonry building, lighted outside and inside at night. On both sides of the building are four electrically activated overhead doors, each about 12 feet wide, 16 feet high and weighing 800 to 1,000 pounds. According to Johnson & Towers, each door was equipped with a factory installed locking mechanism at the bottom and was further secured by steel pins which had been inserted in the tracks on which the door ran. The sum of the testimony for Johnson & Towers was that a door's locks and pins together with the weight of the door would make it impossible to open it from the outside.

Babbington and Langenfelder took a different view of the situation. Their version was that the factory installed locking mechanism was not operable on some of the doors, and that it was because of this that Johnson & Towers had the steel pins inserted. They also testified that because the doors were spring-balanced, it was possible to lift them from inside or outside the shop without activating the electrical mechanism.

On a weekend in February 1968, Johnson & Towers' service manager was notified by the Baltimore County Police Department that one of the company's trucks had been found, abandoned at some distance from the firm's building. When he checked the premises, the service manager found that a hole, five or six inches in diameter, had been cut in the glass pane of one of the overhead doors. It seems to be agreed that since the pane was about four feet from the bottom of the door, an intruder could reach the steel pin and the electric switch, but not the factory installed locking device.

Johnson & Towers apparently concedes that it was a bailee for mutual benefit, who is under a duty to use ordinary care and diligence, *Fox Chevrolet Sales v. Middleton*, 203 Md. 158, 164, 99 A. 2d 731 (1953) ; *Schleisner Co. v. Birchett*, 202 Md. 360, 363, 96 A. 2d 494 (1953) and not a gratuitous bailee, who is liable only for wrongful conduct (sometimes referred to as gross negligence), *Mickey v. Sears, Roebuck & Co.*, 196 Md. 326, 331, 76 A. 2d 350 (1950) ; *Schermer v. Neurath*, 54 Md. 491, 496 (1880).

The court below instructed the jury that as a matter of law, this was a bailment for mutual benefit, and that Johnson & Towers was under a duty to exercise ordinary care in the protection of its employees' tools. The jury was then instructed fully on the questions of negligence and of contributory negligence. Johnson & Towers' failure to except to this charge below precludes it from raising an objection in this appeal, Maryland Rule 554 d, e.

The gist of Johnson & Towers' argument is that the lower court erred in not granting its motion for directed verdict or, in the alternative, in not granting its motion for judgment *n.o.v.* because the jury verdict was clearly erroneous, in that there was insufficient evidence of its negligence. We have concluded that where there is a bailment for mutual benefit, and there is "a demand and an unexplained refusal to deliver * * * [the bailed property], a *prima facie* case of negligence is made out; yet, when the loss or injury is accounted for as having been occasioned by a cause which would excuse the bailee, such as a burglary of * * * [the] premises, then the defense is complete, unless the bailor follows by showing that the bailee, by the exercise of ordinary care and diligence might have avoided the loss or injury," *Fox Chevrolet Sales v. Middleton, supra* at 161.

The burden is always on the bailor to establish affirmatively that the burglary was occasioned or was not prevented by reason of some negligence on the part of the bailee, *Security Storage Co. v. Martin*, 144 Md. 536, 551, 125 A. 449 (1924). There have been cases in this Court

as well as in courts of other States which have concluded, on similar facts, that the question of the negligence of the bailee is ordinarily for the jury, *Fox Chevrolet Sales v. Middleton, supra; Smith v. Cohen,* 116 Pa. Super. 395, 176 A. 869 (1935) ; *Hodell v. Tower's Stores,* 218 App. Div. 572, 218 N. Y. S. 561 (1926) ; *Harding v. Shapiro,* 165 Minn. 248, 206 N. W. 168 (1925) ; *Rogers v. Murch,* 253 Mass. 467, 149 N. E. 202 (1925).

In this case there was evidence from which the jury could have concluded, as it apparently did, that the mere lighting of the Johnson & Towers premises was not a sufficient precaution, when taken in conjunction with testimony that the locks at the foot of the doors were ineffective; that the steel pins inserted in the door tracks could be reached from the outside if a pane of glass in the doors was broken; that the doors could be opened, either by pressing the switch which could be reached through the broken pane, or by lifting the spring-balanced door; that even the locked crib, which had been broken and entered, offered insufficient protection, and that three or four prior attempts had been made to break into the building, at least one of which had been successful.

Taking the evidence and the inferences which may be drawn therefrom in the light most favorable to Babbington and Langenfelder, which we must do when there is an appeal from a denial of a motion for directed verdict made under Rule 552, *Smith v. Bernfeld,* 226 Md. 400, 174 A. 2d 53 (1961), we cannot say that the testimony so clearly established the exercise of ordinary care and diligence on the part of Johnson & Towers as to warrant taking the case from the jury on the motion. Moreover, a jury verdict predicated on legally relevant and competent evidence from which a rational mind could infer that the bailee failed to exercise ordinary care and diligence and that this failure was the proximate cause of the loss, should not be disturbed, *Yommer v. McKenzie,* 255 Md. 220, 228, 257 A. 2d 138 (1969).

*Judgments affirmed, costs to be paid by appellant.*