529 A.2d 822

**COMMODITIES RESERVE CORPORATION et al.**

v.

**BELT'S WHARF WAREHOUSES, INC. et al.**

Misc. No. 19, Sept. Term, 1986.

Court of Appeals of Maryland.

Aug. 20, 1987.

Motion for Reconsideration Denied Oct. 5, 1987.

---

**366**

David W. Skeen, Wright, Constable & Skeen, on brief, Baltimore, for appellant.

Scott A. Hunsicker, Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH *, McAULIFFE and ADKINS, JJ.

RODOWSKY, Judge.

We are here concerned with the "burden(s) of proof" in actions by an owner/bailor against a warehouser/bailee for harm to warehoused goods. Two questions have been certified to us by the United States Court of Appeals for the Fourth Circuit.[1] *See Commodities Reserve Corp. v. M/S Roumania,* 806 F.2d 501 (4th Cir.1986). The questions are:

>  1. What are the respective liabilities of a warehouseman (or bailee) and the owner (or bailor) of property stored with the warehouseman for loss of or damages to such property by reason of the failure of the bailee to return the property at the termination of the bailment in the same condition as it was when delivered to the bailee and, in particular, what is the burden of proof, if any, resting on each (the bailor and the bailee) in establishing the cause of such loss or damage?

---

* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

**1.** The certification is pursuant to the Maryland Uniform Certification of Questions of Law Act, Md.Code (1974, 1984 Repl.Vol.), §§ 12–601 to –609 of the Courts and Judicial Proceedings Article.

2. As between the bailor and the bailee, who carries the ultimate burden of proof when the evidence presented as to the proximate cause of the damages to the bailed property is in equipoise?

■ Involved in the requested analysis is Md.Code (1975), § 7–403(1)(b) of the Commercial Law Article (CL), which is set out below:

(1) The bailee must deliver the goods to a person entitled under the document ... unless and to the extent that the bailee establishes any of the following:

. . . .

(b) Damage to or delay, loss or destruction of the goods for which the bailee is not liable, but the burden of establishing negligence in such cases is on the person entitled under the document[.]

As hereinafter explained we shall hold, in substance, that the initial burden is on the bailor to produce, at a minimum, evidence giving rise to a presumption that the warehouser was negligent, that the warehouser then has the burden to go forward and produce exculpating evidence, and that the ultimate risk of nonpersuasion as to negligence rests on the bailor.[2]

---

**2.** Dean McCormick has explained that the term "burden of proof" actually encompasses two separate concepts which come into play at different times during the course of trial:

One burden is that of producing evidence, satisfactory to the judge, of a particular fact in issue. The second is the burden of persuading the trier of fact that the alleged fact is true.

The burden of producing evidence on an issue means the liability to an adverse ruling (generally a finding or directed verdict) if evidence on the issue has not been produced. It is usually cast first upon the party who has pleaded the existence of the fact, but ... may shift to the adversary when the pleader has discharged his initial duty. The burden of producing evidence is a critical mechanism in a jury trial, as it empowers the judge to decide the case without jury consideration when a party fails to sustain the burden.

The burden of persuasion becomes a crucial factor only if the parties have sustained their burdens of producing evidence and only when all of the evidence has been introduced. It does not shift from party to party during the course of the trial simply because it need not be allocated until it is time for a decision. When the time

The goods in this case were approximately 2,200 tons of Turkish garbanzo beans (the Turkish beans) that were transported and stored in some 40,000 burlap bags. Commodities Reserve Corporation and Klein Brothers, Inc., the owners of the Turkish beans, contracted with Belt's Wharf Warehouses, Inc. (Belt's) to store their beans at the latter's warehouse in Elkridge, Maryland. After several months in storage, it was discovered that the beans were infested with cowpea weevils. The bailors and their insurers (collectively Commodities) sued, among others, Belt's and the owner of a lot of Mexican garbanzo beans (the Mexican beans) also stored at the Elkridge warehouse, for loss caused by the cowpea weevil infestation.

The case was tried without a jury before a United States Magistrate who found for Belt's for the reasons stated in an oral opinion.

The ultimate factual question was which of the two lots of beans contained the source from which the weevils multiplied over time into the infestation as discovered. Proof of specific causation necessarily depended on attempts at reconstruction. Commodities contended that weevils entered the warehouse in the Mexican beans. Belt's contended that the infestation started with weevils already present in the Turkish beans when they were received into the Elkridge facility. Based on all the evidence, the magistrate accepted as true certain historical facts from which, Commodities argued, the magistrate should find that the source was the Mexican beans. The legal sufficiency of those historical facts to prove that ultimate fact is not disputed before us. But the magistrate was not able to conclude by a preponderance that the source was the Mexican beans. The magistrate also found to be true certain

---

for a decision comes ... [t]he jury must be told that if the party having the burden of persuasion has failed to satisfy that burden, the issue is to be decided against him. If there is no jury and the judge finds himself in doubt, he too must decide the issue against the party having the burden of persuasion. [C. McCormick, *McCormick on Evidence* § 336, at 947 (3d ed. 1984).]

historical facts urged by Belt's as proving that the source was the Turkish beans. The legal sufficiency of those historical facts to prove that ultimate fact is not disputed before us. But the magistrate similarly was unable to find by a preponderance that the Turkish beans were the source. As the fact finder, the magistrate said that his mind was in a state of equipoise as to the specific cause. Relying principally on CL § 7–403(1)(b) as interpreted in *J. Aron & Co. v. Service Transportation Co.*, 486 F.Supp. 1070 (D.Md. 1980), the magistrate held that the burden of persuasion, or risk of nonpersuasion, on the causation issue was on Commodities. Consequently, the Turkish-Mexican standoff went to Belt's.

I

CL § 7–204(1) sets forth the duty and standard of care applicable here by providing that

[a] warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise of such care.

When the bailor sues the warehouser alleging harm caused by breach of the above-described duty, the plaintiff has the initial burden of producing evidence which, if believed, would be legally sufficient to support a finding at the close of the plaintiff's case that the § 7–204(1) duty had been breached. Failure to meet that burden may result in the entry of judgment for the bailee at the end of the plaintiff's case in chief. The plaintiff's initial burden may be met by proof demonstrating a specific lack of care by the bailee or by evidence sufficient to raise a presumption of some unspecified negligence on the part of the bailee. Under the latter alternative the plaintiff simply proves delivery to the warehouser of the personal property in good condition and either a failure to return the goods at all, or a redelivery in bad condition.

■ Sufficient proof of delivery in "good condition" depends upon the circumstances, including principally the type of personalty involved and the general cause of the loss or damage. For example, in *Freter v. Embassy Moving & Storage Co.*, 218 Md. 12, 145 A.2d 442 (1958), the warehoused goods included a stamp collection, bedding, and linens which the plaintiff complained were returned from storage damaged from water, moisture, and mildew. To obtain the presumption, the plaintiff's initial burden was to produce evidence of delivery of the goods to the warehouser in dry condition. The claim in *Security Storage & Trust Co. v. Denys*, 119 Md. 330, 86 A. 613 (1913) involved, *inter alia*, the scarring of household furniture that the defendant had moved from the plaintiff's home to storage, stored, and then shipped by railroad to the plaintiff in another city. To gain the presumption, the plaintiff had to produce evidence that the furniture was undamaged when delivered to the defendant.

If the bailee chooses not to put on any case, the court might be required to determine the legal sufficiency of the plaintiff's evidence to prove a prima facie case and the fact finder might be required to accept or reject the bailor's evidence.

■ More typically, however, the bailee will put on a defense. In the terminology employed in bailment cases, the "burden of proof" is said to "shift" to the defendant. Phrased more precisely, the bailee chooses not to risk the entry of judgment for the bailor at that point and decides to produce, or go forward with, evidence. There are, in general, two classes of defensive evidence. The bailee may undertake to prove a specific cause as to which there was no negligence on the bailee's part. For example, the bailee may produce evidence that the goods were stolen despite the bailee's exercise of reasonable care to protect the goods from theft. *See, e.g., Johnson & Towers Baltimore, Inc. v. Babbington*, 264 Md. 724, 288 A.2d 131 (1972); *Fox Chevrolet Sales v. Middleton*, 203 Md. 158, 99 A.2d 731 (1953); *Schleisner Co. v. Birchett*, 202 Md. 360, 96 A.2d 494 (1953). If the cause cannot be specified, but it can be isolated within a manageable class of possibilities, the bailee may produce evidence tending to show the exercise of due care with respect to all of the possible causes.

Assuming that the merits have not been decided at the close of the bailee's case, *e.g.*, because of legally sufficient evidence of a defense, the bailor may choose to put on a rebuttal case. Typically this will attempt to show that the bailee did not exercise due care to protect against a cause of loss about which there is no dispute. In the example of loss due to theft, the bailor might undertake to show a lack of adequate security on the bailee's premises.

In the case before us Commodities and Belt's respectively produced evidence of negligence and of due care.[3]

## II

This case was then submitted to the trier of fact who was unable to find that the proof of either of the competing causes preponderated. This takes us from burdens of production to the ultimate burden of proof. Hence the second certified question which asks which party bears the risk of nonpersuasion on the negligence issue.

■ Where, as here, the bailee is a warehouser who issued a document of title, the answer is found in the language of the "but" clause of CL § 7–403(1)(b). It specifies that "the burden of establishing negligence in such cases is on the person entitled under the document[.]" Judge Blair held in a diversity case that this provision of

---

**3.** This case does not present the classic, theoretical problem of how the presumption operates in the face of direct evidence contrary to the presumed fact, and we have no need to examine our cases from that aspect. *Cf. Trans-System v. Keener,* 249 Md. 369, 372–73, 239 A.2d 897, 899 (1968) (bailee's evidence "overcame the [bailor's] presumption of negligence to the extent that as a matter of law the [bailor's] prima facie case was rendered of no evidentiary value and a verdict should have been directed for the [bailee].") Under the peculiar facts here the universe of possible sources of infestation was the Mexican or the Turkish beans or both. Because the bailor was unable to satisfy the trier of fact that the infestation originated solely in the Mexican beans, the bailor also failed to satisfy the fact finder that the Turkish beans had been delivered in good condition and were not the source of the weevils. Hence, even if the presumption operates in Maryland as substantive evidence which remains in the case throughout, the bailor here failed to persuade as to the existence of facts necessary to achieve that effect.

the Maryland Code "places the ultimate burden of proof upon the owner of the bailed goods...." *J. Aron & Co. v. Service Transp. Co., supra,* 486 F.Supp. at 1073.

The quoted language is optional in the Official Text of the Uniform Commercial Code. The optional language, without variation from the Official Text, has been adopted in Arizona, Iowa, Kentucky, Maryland, Nevada, New York, North Carolina, Ohio, Oregon, Pennsylvania, and Wyoming. Unif. Commercial Code § 7–403, 2A U.L.A. 433 (1977). In Florida the optional language applies where the damage exceeds $10,000. *Id.* at 434. The Supreme Court of Florida has held that under Florida common law the burden of persuasion was on the bailor, that the effect of the enactment there of U.C.C. § 7–403(1)(b) without the optional language was to place the burden of persuasion on the bailee, but that the amendment adding the optional language placed the burden of persuasion on the bailor where damages exceeded $10,000. *See Reserve Ins. Co. v. Gulf Fla. Terminal Co.,* 386 So.2d 550 (Fla.1980); *see also Lonray, Inc. v. Azucar, Inc.,* 568 F.Supp. 189 (M.D.Fla.1983) (applying *Reserve Insurance* in a diversity action), *aff'd in relevant part,* 775 F.2d 1521 (11th Cir.1985). There appear to be no other judicial holdings specifically construing the optional language's effect on the risk of nonpersuasion as to negligence.

Commenting on the optional language, W. Hawkland, T. Holland, & R. Anzivino, *Uniform Commercial Code Series* § 7–403:03, at 255–56 (1986) say:

There is optional language in subsection 7–403(1)(b) which places the burden of establishing the bailee's negligence on the bailor or his transferee. This was the rule followed by the majority of courts under the prior law. Today, many courts continue to follow this approach. In those jurisdictions, once the bailor has established his prima facie case, a presumption of negligence in favor of the bailor arises which shifts to the bailee the burden of going forward with the evidence. The ultimate burden of

persuasion, however, rests on the bailor. [Footnotes omitted.]

R. Henson, *Documents of Title Under the Uniform Commercial Code* § 4.3, at 48–49 (1983) cites *J. Aron & Co.* in attributing to the optional language the same effect described by W. Hawkland *et al.*, including placing the ultimate burden of proving negligence in the bailee on the bailor.

J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 20–3, at 791 (1980), submit that the policy embodied in the optional language is unsound because the warehouser has far better access to the facts than the bailor. Nevertheless, they recognize that the optional "language addresses the more important question of who has the ultimate risk of nonpersuasion on the issues of negligence and causation, and it allocates that risk to the plaintiff." *Id.* at 790–91. Broude, *The Emerging Pattern of Field Warehouse Litigation: Liability for Unexplained Losses and Nonexistent Goods,* 47 Neb.L.Rev. 3, 21 (1968) shares both the legal conclusion and policy judgment of White and Summers. *Cf. Adams v. Ryan & Christie Storage, Inc.,* 563 F.Supp. 409, 413 (E.D.Pa.) (*dicta* comment that result would be "inappropriate" were a court "properly following [the optional] language" to assign ultimate burden to bailor), *aff'd,* 725 F.2d 666 (3d Cir.1983).

R. Anderson, *On the Uniform Commercial Code* § 7–403:5 states that "[i]t is questionable, in view of the Official Comment, whether the optional language is to be given its literal effect of placing the burden of proof on the bailor." (Footnotes omitted). In support, Anderson cites only *United States v. Cloverleaf Cold Storage Co.,* 286 F.Supp. 680 (N.D.Iowa 1968).

*Cloverleaf* arose on a motion to dismiss a complaint for failure to state a claim for relief, inasmuch as the third-party plaintiff, Commodity Credit Corporation, as bailor, did not allege negligence by the warehouser. The court first reasoned that under the Commodity Credit Corporation Act federal, rather than local, law applied. The Iowa version of U.C.C. § 7–403(1)(b) includes the optional language. Recog-

nizing that the U.C.C. could be a persuasive source of federal law, the court noted that, at that time, twenty-six states had rejected the optional language and only eight states had adopted it. The court also noted that the U.C.C. Official Comment said that the optional language "states the rule laid down for interstate carriers in many federal cases." According to *Cloverleaf* that federal rule, upon proof of a prima facie case by a shipper, shifted "the final burden of proof . . . to the carrier to explain the loss." The court commented that "[i]t would appear that the intent of the additional language could have been to place the burden on the warehouseman instead of the bailor. . . ." *Id.* at 682.

R. Riegert & R. Braucher, *Documents of Title* § 3.3, at 40 (3d ed. 1978) say that, "[f]ollowing the rule laid down for carriers in some federal cases, the [optional language] places the burden of establishing negligence on the claimant." Those authors then cite *Cloverleaf* as setting out the federal rule in warehouse cases, which they term the "intermediate rule," *i.e.,* one which merely places the burden of going forward with the evidence on the bailee.

In substance, we deal with a statutory interpretation question. One way "to discover [the] purpose, aim, or policy [of the optional language is to] look at the words of the statute." *Kaczorowski v. Mayor of Baltimore,* 309 Md. 505, 513, 525 A.2d 628, 632 (1987). This is "because what the legislature has written in an effort to achieve a goal is a natural ingredient of analysis to determine that goal." *Id.* We agree with Judge Blair and with the majority of the commentators and the Supreme Court of Florida that the purpose and effect of the optional language is to place on the bailor the risk of nonpersuasion on the negligence issue. We cannot read the statutory language placing the burden "on the person entitled under the document" to mean it is placed on the person who issued the document.

Commodities argues that it would be better social and business policy to place the burden of persuasion as to negligence on the warehouser; however, the General Assembly has made that policy decision, and we cannot re-

write the statute. Indeed, the statute is consistent with general Maryland bailment law, whether or not a document of title is involved. At least as early as *Security Storage & Trust Co. v. Martin,* 144 Md. 536, 551, 125 A. 449, 454 (1924) we said, after describing the effect of a prima facie case of negligence and the bailee's burden of then producing evidence, that "the burden of proving negligence never shifts from the plaintiff." This is necessarily a reference to the risk of nonpersuasion. That statement has been reiterated in several Maryland cases. *See Clemson v. Butler Aviation,* 266 Md. 666, 670, 296 A.2d 419, 421 (1972); *Johnson & Towers Baltimore, Inc. v. Babbington, supra,* 264 Md. at 727, 288 A.2d at 133; *Trans-System Serv., Inc. v. Keener,* 249 Md. 369, 372, 239 A.2d 897, 898 (1968); *Fox Chevrolet Sales v. Middleton, supra,* 203 Md. at 161, 99 A.2d at 732; *Schleisner Co. v. Birchett, supra,* 202 Md. at 365, 96 A.2d at 497.

The principal contention advanced by Commodities is based on the magistrate's inability to find that the Turkish beans were the source of the infestation. It is also based on the following definition in CL § 1–201(8):

*"Burden of establishing"* a fact means the burden of persuading the triers of fact that the existence of the fact is more probable than its nonexistence.

Forms of the verb "to establish" appear twice in CL § 7–403(1)(b) ("The bailee must deliver the goods ... unless ... the bailee *establishes* ... loss or destruction of the goods for which the bailee is not liable, but the *burden of establishing* negligence in such cases is on the person entitled under the document[.]" (Emphasis added)). Commodities submits that Belt's was required to "establish" a cause of the infestation for which it was not liable and, per CL § 1–201(8), that burden was one of persuasion and not simply one of producing evidence. The burden placed on the bailor by the optional language only arises "in such cases," and Commodities submits the phrase refers to those cases in which the bailee has first established an innocent

cause of loss. In its brief Commodities says the ware-houser must establish that innocent cause "with certainty."

Turning first to the precise text, we note that while the statute uses "establishes" concerning the warehouser, it uses the § 1–201(8) definitional term of art, "burden of establishing," concerning the bailor. The difference is con-sistent with the warehouser's having a burden of producing evidence and with the bailor's having the risk of nonpersua-sion. Second, to read "establishes" as meaning "burden of establishing" creates a burden of persuasion on the bailee to show an exculpatory cause while there is also a burden of persuasion on the bailor to show an inculpatory cause for the same loss. That is an unreasonable and confusing construction of the statute which avoids, rather than an-swers, the question of which party bears the risk of nonper-suasion on the negligence issue.

Commodities attempts to meet the second objection set forth above by submitting that the burdens of persuasion are sequential. Not surprisingly, Commodities says that the warehouser's burden is tested first and, because Belt's failed in its burden of persuasion, it is immaterial that Commodities also failed in its burden of persuasion. Com-modities's argument is inconsistent with the way in which trials are conducted, as described in detail in part I of this opinion. The inconsistency is more vivid if we assume a jury trial. At the end of the bailee's case the trial judge does not have the jury retire to determine if the bailee has persuaded them of an exculpatory cause, and if so, then have the jury return to the box for the purpose of hearing the bailor's rebuttal case so that the jury may then decide whether the bailor persuaded them of an inculpatory cause. The weighing of evidence for persuasiveness is done once, at the conclusion of all of the evidence, and only one adversary has the burden of persuasion on any given issue.

Commodities also makes an argument peculiar to § 7–403(1)(b) as adopted in Maryland. Pursuant to a joint resolution of the General Assembly passed during its 1961 session, Governor J. Millard Tawes appointed a commission

to study the proposed U.C.C. That study group described Title 7, "Documents of Title," to be "principally a consolidation and restatement of existing rules with little change of substance." *Report of the Commission to Study and Report on the Uniform Commercial Code,* at 6 (1963). According to Commodities, Maryland law had placed the burden of persuasion on the bailee under the predecessor Uniform Warehouse Receipts Act (UWRA); hence, CL § 7–403(1)(b) must be construed to do the same.[4]

To demonstrate Maryland law under the UWRA, Commodities cites *Security Storage & Trust Co. v. Denys, supra,* and *Leckie v. Clemens,* 135 Md. 264, 108 A. 684 (1919). *Security Storage* had approved a jury instruction which, after describing proof giving rise to the presumption of negligence, had said that "the burden was upon the defendant company to establish the contrary by affirmative proof to the satisfaction of the jury." 119 Md. at 344, 86 A. at 616. *Leckie* was also a warehouser's appeal from a judgment entered on a jury verdict. In instructing concerning the bailee's duty of care, the trial court had told the jury that "the burden is on the defendant to show by the evidence that in storing said trunk and contents he did use such care." 135 Md. at 267, 108 A. at 685. The judgment was affirmed. This Court reviewed the adoption of the UWRA which had provided that " 'in case the warehouseman refuses or fails to deliver the goods in compliance with the demand of the holder or depositor ... *the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal.' " Id.* at 268, 108 A. at 686 (emphasis in original). After pointing out that *Security Storage* was the first case decided by this Court under the UWRA and after reviewing the holding of that case, we said in *Leckie:* "It would, therefore, seem that the rule in this State, as now established, places upon the bailee the

---

**4.** The UWRA, former Art. 14A, had been enacted by Ch. 406 of the Acts of 1910 and was in effect for fifty-three years in Maryland until repealed by the enactment of the U.C.C.

burden of proving due care, or overcoming the presumption of negligence." *Id.* at 270, 108 A. at 686.

The quotations relied on by Commodities from these two opinions can be read to relate to the need for the bailee to present evidence to rebut the presumption of negligence, or to relate to an overarching burden of persuasion. Today, it is only of academic interest where the burden of persuasion might have been allocated in this state under the former UWRA. We shall assume, *arguendo* (and contrary to general Maryland bailment law), that the burden of persuasion was allocated by the UWRA to the warehouser in transactions governed by the UWRA. Nevertheless, the U.C.C. study commission's general comment concerning no substantial change does not justify ignoring the explicit allocation to the bailor of the burden of persuasion under the optional language adopted in CL § 7–403(1)(b).

CERTIFIED QUESTIONS ANSWERED AS ABOVE SET FORTH. COSTS TO BE DIVIDED BETWEEN THE PARTIES.