29 A.3d 986

**Douglas Scott AREY**

v.

**STATE of Maryland.**

**No. 104, Sept. Term, 2010.**

Court of Appeals of Maryland.

Sept. 22, 2011.

Reconsideration Denied Nov. 18, 2011.

Marc A. DeSimone, Jr., Assistant Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief

Robert Taylor, Jr., Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Appellee.

Argued before HARRELL, GREENE, ADKINS, BARBERA, JOHN C. ELDRIDGE, (Retired, Specially Assigned), LAWRENCE F. RODOWSKY, (Retired, Specially Assigned) and IRMA S. RAKER, (Retired, Specially Assigned), JJ.

GREENE, J.

In 1974, Appellant, Douglas Scott Arey, was convicted of first-degree murder and use of a handgun in the commission of a felony. In 2001, the Maryland Legislature passed the DNA Evidence—Postconviction Review Act,[1] becoming one of more than thirty states which now have similar statutes providing for postconviction scientific testing of evidence in cases where the petitioner was convicted of one or more statutorily enumerated crimes. *See Blake v. State*, 395 Md. 213, 218–19, 909 A.2d 1020, 1023 (2006) (*Blake I*). Section 8–201(b) of Criminal Procedure Article of the Maryland Code grants a right to a person convicted of one or more specified crimes to file a petition for DNA testing of evidence in the possession of the State that relates to a conviction. *See* Md. Code (2001, 2008 Repl.Vol.), § 8–201(b) of the Criminal Procedure Article.[2] On May 7, 2002, Arey filed a petition in the

---

1. Chapter 418 of the Acts of 2001.

2. Unless otherwise specified, all statutory references are to Md.Code (2001, 2008 Repl.Vol.), § 8–201 of the Criminal Procedure Article. Section 8–201 provides in pertinent part:

Circuit Court for Baltimore City for postconviction DNA testing of evidence related to his conviction. On April 21, 2010, the Circuit Court dismissed the petition, concluding that the evidence related to Arey's conviction no longer existed. On July 26, 2010, Arey filed a timely appeal from that ruling directly to this Court pursuant to § 8–201(j)(6).[3] We are asked to decide the following questions:

(1) Did the [Circuit Court for Baltimore City] err when it held that the State had performed a reasonable search for biological evidence relating to Mr. Arey's conviction, and dismissed Mr. Arey's request for the production of evidence? [4]

(2) Did the [Circuit Court for Baltimore City] err in denying Mr. Arey's request for production and testing of biological evidence relating to his conviction the day after the State filed a pivotal affidavit, and thus, without giving Mr. Arey a reasonable opportunity to respond to the factual allegations contained in that affidavit prior to dismissal.

---

(b) *Filing of petition.*—Notwithstanding any other law governing postconviction relief, a person who is convicted of a violation of § 2–201, § 2–204, § 2–207, or §§ 3–303 through 3–306 of the Criminal Law Article may file a petition for DNA testing of scientific identification evidence that the State possesses as provided in subsection (i) of this section and that is related to the judgment of conviction.

(c) *Findings requiring DNA testing.*—Subject to subsection (d) of this section, a court shall order DNA testing if the court finds that:
(1) a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing; and
(2) the requested DNA test employs a method of testing generally accepted within the relevant scientific community.

3. Section 8–201(j)(6) allows an appeal to the Court of Appeals from an order entered under certain subsections of the statute.

4. Because we hold that the hearing judge ruled prematurely on Arey's petition, as Arey was not provided an adequate opportunity to respond to the affidavit, we decline to address the first issue with regard to the reasonableness of the search. Instead, we shall remand to the Circuit Court for further proceedings.

For the reasons stated below, we shall reverse the dismissal of Arey's petition for DNA testing and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

In May 1973, Baltimore City police officers contacted Arey and requested that he come into the station for questioning regarding the death of his former employer, Samuel Shapiro. After voluntarily submitting to questioning, Arey confessed to the police that he shot Shapiro and was charged with first degree murder and other related crimes. Among the evidence presented by the State at the original trial was a blue denim shirt which Arey had been wearing when he arrived at the police station for questioning. There was a small amount of blood on the right shoulder area of the shirt, which Arey claimed was his own blood. At a pretrial hearing, Arey asserted that he had been nervously picking at pimples on his face during interrogation and had wiped the blood on the back of his shirt. Detective James Russell of the Baltimore City Police Department testified that he had observed this occur. The State presented expert testimony from Robert S. Davis, the police department's crime laboratory technician, who testified that scientific analysis had resulted in the finding that the shirt contained type AB blood, which matched the victim's blood type, and did not match Arey's type O blood. Arey's counsel argued that the mixture of blood and bacteria from Arey's pimples could have created an inaccurate blood type result if the bacteria contained antigens similar to those found in AB blood. Arey's counsel attempted to demonstrate this effect at a pretrial hearing by applying a mixture of Arey's blood and bacteria to the same shirt and submitting it for re-testing. The blood type test, however, resulted in a finding of type O blood.

The results of the scientific analysis of the blood on Arey's shirt were admitted into evidence, along with the testimony of Dennis Moon, who claimed to have assisted Arey with the murder, and the confession from Arey himself. In April 1974, Arey was convicted of first-degree murder and use of a

handgun in the commission of a felony, and sentenced to life imprisonment plus ten years concurrent. The Maryland Court of Special Appeals affirmed the conviction on June 2, 1975.

On May 7, 2002, Arey filed a *pro se* petition in the Circuit Court for Baltimore City under § 8–201 of the Criminal Procedure Article, seeking postconviction DNA testing of evidence related to his convictions. The State produced an affidavit of a police sergeant averring that the evidence no longer existed after the sergeant searched the database and records of the Baltimore City Police Department's Evidence Control Unit (ECU) and found no reference to the evidence. On the basis of the affidavit, the Circuit Court for Baltimore City dismissed the petition on July 17, 2006.

In 2007, we reversed and remanded, holding that the Circuit Court erred in dismissing the petition because the State's affidavit was not sufficient to constitute a reasonable search for the evidence requested. *See Arey v. State,* 400 Md. 491, 503–04, 929 A.2d 501, 508 (2007) (*Arey I*). We pointed out that "[t]he State should have attempted to determine the proper protocol for handling and destroying evidence in Baltimore City in 1974. From this, the State might have discovered other locations to search for the requested evidence or determined more conclusively its fate." *Arey I,* 400 Md. at 504, 929 A.2d at 508.

On remand, the Circuit Court held four separate hearings between November of 2007 and April of 2010. At the first hearing on November 19, 2007, the State contended that a large amount of evidence was damaged or destroyed when the basement of the Baltimore City Police Department building was flooded by Hurricane Isabel in 2003. The State claimed that it was in the process of securing an outside contractor to conduct an inventory of all of the evidence recovered from the flood. At the second hearing on February 19, 2009, Lieutenant Colonel Michael Andrew, the commanding officer of the Baltimore City Police Department's ECU, testified that a contractor had inventoried 417,000 pieces of evidence recovered from the flood and found no evidence related to Arey's

case. Lt. Col. Andrew did testify, however, that a warehouse containing a mass of unidentifiable clothing damaged in the flood was not searched. At the third hearing on June 12, 2009, the State provided the logbook from the Baltimore City Police Department's crime laboratory which showed that the evidence in Arey's case was examined in May 1973 by someone with the initials "R.S.D." The Circuit Court for Baltimore City ordered the State to ascertain the identity of R.S.D. and to provide Arey's counsel with access to the logbook. On April 19, 2010, the State filed an affidavit from Robert S. Davis,[5] the crime laboratory technician who testified at Arey's original trial, which contained the following relevant averments:

(3) I do not recall the shirt, any work I may have performed upon it and I certainly have no recollection of where I might last have seen it or where it might be now.

(4) I do recall that I did not personally keep any physical evidence [i]n cases after testing was performed upon such evidence and that items, such as a shirt, were ordinarily returned to the Evidence Control Unit after laboratory work was completed.

(5) The small about [sic] of sample that I test would generally be consumed by the process of analysis. We retained no evidence in the laboratory when our work was complete.

On April 21, 2010, two days later, the Circuit Court dismissed the petition for DNA testing on the ground that the State conducted a reasonable search for the evidence. The court issued the following Order:

With the State's submission of the affidavit of Ronald Davis, the ECU crime lab technician who handled Petitioner's evidence in this case; and having held a final hearing on April 7, 2010;

---

**5.** The initials R.S.D. caused some confusion at previous hearings in this case, with the parties often referring to a "Ronald S. Davis," when it was "Robert. S. Davis" who gave the averments and who testified at Arey's original trial. In the order dismissing the petition, the Circuit Court incorrectly referred to the affiant as Ronald S. Davis.

The Court is satisfied that the State has done a reasonable search under § 8–201 of Maryland's Criminal Procedure Article; and it is this 21st Day of April, 2010, hereby

**ORDERED** that Mr. Arey's Motion for DNA Testing is **DENIED.**

Arey noted a timely appeal from that ruling to this Court.

## DISCUSSION

■■■ When reviewing a Circuit Court's ruling that the State's search was reasonable under § 8–201, this Court will uphold findings of fact unless they are clearly erroneous. *Blake v. State*, 418 Md. 445, 460, 15 A.3d 787, 796 (2011) (*Blake II* ). In his appeal to this Court, Arey first contends that the hearing judge erred in holding that the State performed a reasonable search for evidence relating to his conviction. According to Arey, the State's search for evidence was not reasonable because it consisted only of a search by property number when the property number associated with Arey's case was either undisclosed or unknown. More specifically, Arey argues that the State has failed to look through a large mass of "old clothing" for the shirt and has neglected to search for the blood slides used by the crime laboratory for blood type analysis. These issues, in our view, are best left for the hearing judge to resolve in the first instance, on remand, and we decline to address them. Secondly, Arey argues that the hearing judge erred in prematurely ruling on his petition for DNA testing by dismissing it the day after the State filed the pivotal affidavit of Mr. Davis.[6]

The State contends that the hearing judge's finding that the State conducted a reasonable search for evidence is not "clearly erroneous" pursuant to the standard of review set forth in *Blake II.* According to the State, by submitting Davis's affidavit, it has met its burden of conducting a reasonable search. Additionally, the State contends that it has searched all of the

---

6. As noted, *supra,* the affidavit was filed on April 19, 2010 and the trial judge dismissed the petition on April 21, 2010, two days after receiving the affidavit, rather than one day, as Arey asserts.

places where the evidence could possibly have been found including the ECU, original trial judge's chambers, original trial courtroom, State's Attorney's office, court clerk's office, and the court reporter's office. While the property control number associated with the evidence in Arey's case was never located, the State contends that other attempts were made to find the evidence using the criminal complaint number and the physical description of the shirt. Finally, the State maintains that it has sufficiently identified the evidence-handling protocol in 1974 by presenting testimony that officers would authorize the destruction of evidence after any direct appeals concluded. Although we decline to hold that the hearing judge's ultimate conclusion was clearly erroneous, we do decide that, on the record before us, the ruling was premature. Accordingly, we remand the case to the Circuit Court for Baltimore City for further proceedings.

The hearing judge erred in ruling on Arey's petition for testing only two days after the State submitted an affidavit from a key witness. This Court's decisions in *Blake I* and *Horton v. State*, 412 Md. 1, 985 A.2d 540 (2009) support the reversal of the hearing judge's order in this case. In *Blake I*, we held that the Circuit Court erred in summarily dismissing Blake's petition for testing before Blake had an opportunity to respond to the State's allegation that the evidence related to Blake's conviction was no longer in its possession. We stated:

> Fundamental fairness requires that a petitioner be given an opportunity to respond and to challenge the State's representation. When it is the State's position that the evidence sought to be tested no longer exists, the circuit court may not summarily dismiss the petition requesting DNA testing. The court must give a petitioner notice of and an opportunity to respond to the State's allegation. A petitioner has a right to notice and opportunity to contest the State's representation that the evidence is unavailable.

*Blake I*, 395 Md. at 228, 909 A.2d at 1028.

In addition, we held that Blake's rights to due process entitled him to notice of the court's impending ruling and an opportunity to respond. We concluded that:

Appellant had a liberty interest at stake, and was, at a minimum, entitled to notice of the impending action, even if he did not have the right to an oral hearing. *See Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). Consequently, the failure of the Circuit Court to provide *any* notice to appellant that the State had filed the motion to dismiss and that the court intended to rule upon it, and its dismissal of the petition without affording appellant any opportunity to respond, violated his rights to due process.

*Blake I,* 395 Md. at 230, 909 A.2d at 1030 (emphasis in original). Similar to the appellant in *Blake,* Arey was not given adequate opportunity to respond to the affidavit before the hearing judge dismissed his petition. Arey's due process rights entitled him to notice and a reasonable opportunity to respond to the averments in Davis's affidavit before a ruling was made.

In *Horton,* the hearing judge dismissed Horton's petition under § 8–201 for DNA testing of evidence related to his conviction on the ground that the evidence did not exist. *Horton,* 412 Md. at 3, 985 A.2d at 541. We held that the Circuit Court erred in dismissing Horton's petition for DNA testing two days after the State made available a document authorizing destruction of the evidence related to Horton's conviction, and less than one month after the State filed affidavits, because the petitioner did not have a reasonable amount of time to examine the document or to respond to the affidavits by arranging for depositions or interviews with the affiants. *Horton,* 412 Md. at 17–18, 985 A.2d at 549–50. We reversed the dismissal despite the fact that the State in *Horton* had recovered a the document authorizing destruction of the evidence related to Horton's conviction, documentation which is lacking in Arey's case. *See Horton,* 412 Md. at 12–13, 985 A.2d at 546–47. Like *Horton,* Arey's counsel expressed a desire to interview the State's affiant, Robert S. Davis, and was not afforded a reasonable opportunity to arrange for his interview or to respond to the State's representations when

the trial judge dismissed the petition within two days of the State's filing.

The State maintains that continued questioning of Davis will not reveal any further information regarding the location of the DNA evidence. We reject that argument as a bar to Arey's opportunity to respond. The State contends that it is unclear whether the blood slides were ever marked as evidence or held in the ECU. The record before us, however, does not provide any indication of the procedure for the storing or disposing of slides. Even though the 2007 affidavit from the crime laboratory supervisor avers that the slides were not found in a hand search of the crime laboratory, the State subsequently was able to find a notation regarding the analysis of evidence for this case in the laboratory's log book with the initials of Robert S. Davis. Davis's affidavit indicates that evidence was not kept in the crime laboratory after testing was complete and that the small amount of blood was generally "consumed" by testing, but it is still unclear what protocol existed for the disposal of the blood slides made for analysis.

Given the opportunity to interview Davis, Arey's counsel may be able to obtain information about the crime laboratory protocol that could shed light on the possible location of the evidence. Davis may be able to provide a more detailed account of the procedures actually followed at the time of trial such as whether slides were disposed of once analysis was complete, whether slides were stored in the freezer, or whether there was a procedure in place for slides in those situations where the blood was not completely consumed by the process of analysis. While the possibility exists that no further information would come from an interview with Davis, Arey still must be given the opportunity to probe, challenge, or otherwise respond to the statements in the affidavit before a decision can be rendered.

We consider the case of *Blake II* where this Court affirmed the hearing judge's dismissal of a petition for DNA testing. *See Blake II*, 418 Md. 445, 15 A.3d 787. While several of the

hearings for the two petitioners were held jointly and the circumstances surrounding Blake's petition were similar in some respects to Arey's, there exists a significant difference between the two cases. At the final hearing for Blake's petition, Blake's counsel explicitly stated that once the State submitted the final requested information, counsel did not "have any further requests of the State...." *Blake II,* 418 Md. at 458–59, 15 A.3d at 795. On the contrary, Arey's counsel expressly stated that he still wished to speak with Davis to attempt to find out more information about the protocol followed in the 1970's. At the final hearing on April 7, 2010,[7] counsel for Arey stated:

> I'd love to have the opportunity to interview him.... Specifically what I want, if it were up to me and I were the State, what I would do is I would have RSD come in and on the record talk to him about the protocols that were found [sic].... Now if he doesn't remember specifically handling this, which I think is likely, he will remember what the protocols were back then, I would hope.... I think Mr. Davis would be a place to start who could give us information of the best places to look. I mean, once we get that information if he has it, I mean maybe he doesn't remember anything, but we don't know. And the whole point of this, I believe, is for the State ... to be able to say with certainty, what they're saying. They're saying the evidence doesn't exist. And my question is how do you know that.... [W]hy don't we ask people who might have seen it.

In accordance with this Court's decisions in *Blake I* and *Horton,* the hearing judge should not have dismissed the petition by ruling on it two days after the State provided an affidavit from Mr. Davis, the retired laboratory technician, without providing the defendant "an opportunity to respond and to challenge the State's representation." *Blake I,* 395 Md. at 228, 909 A.2d at 1028. Although the State has taken considerable steps to conduct a reasonable search for the

---

7. At this hearing, the judge ordered the State to secure an affidavit from Mr. Davis to be filed by April 19, 2010.

evidence in this case, the petition for testing should not have been dismissed, at least, until Arey had an opportunity to respond to the State's most recent affidavit. Therefore, we reverse and remand this case to the Circuit Court for further proceedings.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**

HARRELL, J., Concurs.

HARRELL, J., Concurring.

I concur in the judgment of the Court, subscribing as I do to the Majority opinion's reasoning supporting its conclusion that the trial court acted prematurely and unfairly when it entered an order on 21 April 2010 denying Arey's petition.[1] I am perplexed, however, at the Majority opinion's avoidance of Arey's initial question presented regarding whether the trial judge was clearly erroneous in declaring penultimately and effectively that the State had discharged its initial burden of production regarding whether it had conducted a reasonable search for the missing evidence to that point. The Majority opinion, in its short shrift treatment of this question,[2] dooms

---

1. The affidavit of Robert S. Davis was transmitted by the prosecutor to the Court and Arey's trial counsel by cover letter of 19 April 2010. The Court's copy was docketed as filed on 20 April 2010. There is no indication in the record extract that Arey's counsel knew in advance what the contents of the Davis affidavit would be, although he had the apparent ability to contact Davis, a retired employee of the State, on his initiative for some considerable time prior to the receipt of the affidavit and failed to do so. Of course, at that juncture in the long life of this case, Arey had no statutory or legal imperative to do so because, at that time, the State bore still the burden of production as to the reasonableness of its search for the missing evidence.

2. After reciting the parties' appellate arguments as to the reasonableness determination, the Majority opinion says simply, "These issues in our view are best left for the hearing judge to resolve, in the first instance, on remand." Majority op. at 334, 29 A.3d at 989. Of course,

to exploitable confusion what should happen on remand.[3] Accordingly, I would reach and decide Arey's first question as well.

Although mentioning the correct standard of review, *see* Majority op. at 333–34, 29 A.3d at 989, the Majority opinion declines to apply that standard to the trial judge's reasonableness determination. The clear instructions in *Blake v. State*, 418 Md. 445, 460, 15 A.3d 787, 796 (2011), are for us to defer to the trial judge's determination of the reasonableness of the State's search, unless that determination is "clearly erroneous." The Majority's (and my) conclusion that Arey and his counsel deserve an opportunity, in part, to respond to the State's submission of the crime lab technician's (Robert S. Davis's) affidavit (which Arey can do in discharging the burden of production now shifted to him), does not relieve us from resolving properly the threshold inquiry of whether the hearing judge's finding in the first instance that the State made a reasonable search is clearly erroneous. For the sake of order alone, we must reach and decide this issue now.

Maryland Code (2001, 2008 Repl.Vol.), Criminal Procedure Article, § 8–201, Maryland Rule 4–710 (2009), and the cases

---

the hearing judge resolved already "these issues" when she concluded that the State met its initial burden of production that a reasonable search had been made for the missing evidence. See Md.Code (2001, 2008 Repl.Vol.), Criminal Proc. Art., § 8–201. This determination preceded the court's ultimate conclusion that Arey's petition should be denied. The Majority opinion and I agree that the ultimate decision was premature and unfair because Arey should have been given an opportunity to respond to the State's discharge of its initial burden of production, which was completed with the filing of Mr. Davis's affidavit. The Majority opinion misses completely the distinction between, and significance of, the penultimate and ultimate determinations of the hearing judge, implicitly throwing out both (although it purports not to decide whether the judge's reasonableness finding was clearly erroneous—see Majority op. at 335, 29 A.3d at 990, "[a]lthough we decline to hold that the hearing judge's ultimate conclusion was clearly erroneous ...").

3. Clarity in our directions on remand is all the more important here because a different judge will conduct those proceedings. The judge who presided over the extensive proceedings culminating in the 21 April 2010 denial order has retired since and did not seek the Court's approval to be recalled.

alluded to in the Majority opinion interpreting the statute and rule require the State to conduct a *"reasonable"* search for the missing evidence. The State is not required to conduct a "complete" or "exhaustive" search.

The Majority opinion leaves muddled for litigants, litigators, and Bench alike the burdens to be borne by parties in similar proceedings and in this case in particular on remand. Our caselaw is somewhat unclear already with respect to which burdens shift to the defendant when a hearing judge concludes, as happened here, that the State established a prima facie case of reasonableness of its search. For example, we stated in *Arey I* that:

> Once the State performs a reasonable search and demonstrates sufficiently a *prima facie* case, either directly or circumstantially, that the requested evidence no longer exists, the State will have satisfied its burden of *persuasion.* The burden of *production* then shifts to the petitioner to demonstrate that the evidence actually exists.

*Arey v. State,* 400 Md. 491, 505, 929 A.2d 501, 509 (2007) (emphases added). The words "prima facie" are synonymous usually with "burden of production." *See, e.g., Questar Builders, Inc. v. CB Flooring, LLC,* 410 Md. 241, 281 n. 25, 978 A.2d 651, 675 n. 25 (2009) ("CB Flooring bears the initial burden of production to adduce a prima facie showing that Questar invoked the termination for convenience clause in bad faith . . . ."). Thus, the language in *Arey I* suggests that, at the inception of a post-conviction DNA proceeding, the State bears the burdens of production and persuasion, but *both* may shift to the defendant, upon a showing by the State, satisfactory to the trial judge, that, after a reasonable search, the DNA evidence could not be found and does not exist.

Ordinarily, only the burden of production shifts between parties; the burden of persuasion stays usually with the party that bore it originally. *See* LYNN MCLAIN, MARYLAND EVIDENCE—STATE AND FEDERAL § 300:2 n. 23 (2d ed. 2001) ("As a general rule, th[e] burden [of persuasion] does not shift, but remains throughout the trial as allocated at the beginning of the trial."); *Sergeant Co. v. Pickett,* 285 Md. 186, 203–04, 401

A.2d 651, 660 (1979) ("The burden of [persuasion], i.e., the risk of non[-]persuasion, never shifts from the party on whom it is placed." (internal quotation marks and citation omitted)). In elucidating this conceit, we quoted from Dean McCormick for the proposition that:

> "The burden of producing evidence on an issue means the liability to an adverse ruling (generally a finding or directed verdict) if evidence on the issue has not been produced.... The burden of producing evidence is a critical mechanism in a jury trial, as it empowers the judge to decide the case without jury consideration when a party fails to sustain the burden.
>
> The burden of persuasion becomes a crucial factor only if the parties have sustained their burdens of producing evidence and only when all of the evidence has been introduced. It does not shift from party to party during the course of the trial simply because it need not be allocated until it is time for a decision. When the time for a decision comes ... [t]he jury must be told that if the party having the burden of persuasion has failed to satisfy that burden, the issue is to be decided against him. If there is no jury and the judge finds himself in doubt, he too must decide the issue against the party having the burden of persuasion [C. McCormick, McCormick on Evidence § 336, at 947 (3d ed. 1984) ]."

*Commodities Reserve Corp. v. Belt's Wharf Warehouses, Inc.,* 310 Md. 365, 368 n. 2, 529 A.2d 822, 823 n. 2 (1987).

Without a clearer indication of legislative intent in Maryland Code (2001, 2008 Repl.Vol.), Criminal Procedure Article, § 8–201, Maryland Rule 4–710 (2009), or our caselaw, we should be reluctant to countenance shifting the burden of persuasion, as opposed to the burden of production, in DNA missing evidence cases. The defendant does not regain control usually of the type of evidence taken from him in this case after it is acquired and used by the State at trial. Thus, if the evidence is retained after trial, most likely it is in the State's (or its agents') possession, if it exists at all. Because of this, the State has the burden of production and persuasion at the

outset of a post-conviction DNA proceeding; however, if the State makes a prima facie showing that the DNA evidence does not exist (e.g., presents testimony and/or documents persuading the hearing judge that a reasonable search was made), then the burden of production only shifts to the defendant. *See Murphy v. 24th St. Cadillac Corp.*, 353 Md. 480, 492, 727 A.2d 915, 921 (1999).

Applying properly the deferential "clearly erroneous" standard to the record here as to the reasonableness of the State's search, we should conclude that the hearing judge's determination that the State discharged its prima facie burden was not clearly erroneous and, thus, the burden of production shifts to Arey on remand. *See Arey I*, 400 Md. at 505, 929 A.2d at 509 (stating that, after the State presents its case, "[t]he burden of production then shifts to the petitioner to demonstrate that the evidence actually exists"). The record is ample to support the trial judge's finding of reasonableness as to the State's search. The Majority opinion documents well the bases for that finding at Majority op. 332–33, 29 A.3d at 988–89.

The Majority opinion's (and my) concern that Arey have an opportunity to inquire behind the face of Davis's affidavit and, further, to attempt to persuade the hearing judge that his petition should not be denied, may be vindicated through Arey attempting to discharge the shifted burden of production.

Arey knows already who Davis is and the role he played in securing his conviction because Davis testified at Arey's 1974 trial. Davis's lab work on the sought-after missing evidence occurred between 1973 (the crime) and 1974 (Arey's trial). The State, in the course of the present proceedings, informed Arey's trial counsel of the since-retired Davis's current address, as ordered by the trial judge some months before Davis's affidavit was filed here. Thus, Arey may examine Davis in open court (once Arey serves him with process or the State persuades Davis to appear as an accommodation) by challenging the accuracy of his non-recollection versus what he apparently does recall in the affidavit.[4]

---

**4.** It is a little difficult to imagine how Arey will probe behind what Davis stated in his affidavit regarding the existence vel non, and the whereabouts, of the "missing" evidence. Davis stated:

The hearing judge's premature and unfair decision to deny Arey's petition so promptly after receiving the Davis affidavit does *not* reflect adversely on the prior determination as to the prima facie reasonableness of the State's search to that point. The State's search was reasonable, notwithstanding the hearing judge's error in signing the 21 April 2010 order of denial, without giving Arey an opportunity to adduce evidence that the evidence exists and where it may be found. That is why there were two questions presented in this case, one addressing the reasonableness of the State's search (for burden shifting purposes) and the other the prematurity and fairness of the trial judge's denial of Arey's petition on 21 April 2010. We should answer both questions.

---

- "I do not recall the shirt, any work I may have performed on it and I certainly have no recollection of where I might last have seen it or where it might be now."
- "I do recall that I did not personally keep any physical evidence and that items, such as a shirt, were ordinarily returned to the Evidence Control Unit ["ECU"] after laboratory work was completed."
- "The small [amount] of sample that I test would generally be consumed by the process of analysis. We retained no evidence in the laboratory when our work was complete."

As the State proved here, the ECU was searched and the evidence not found there. It seems to me a low expectancy that even highly skilled cross-examination of Davis is likely to inspire a catharsis leading to information shedding light on whether the evidence actually exists and, of so, where it is. In any event, Arey should be given that opportunity.